Chickering et al. *v.* Failes, surv., etc., et al.

---

JOHN W. CHICKERING, and JAMES LUDDINGTON, Appellants, *v.* THOMAS H. FAILES, survivor, etc., and DAVID B. LEE *et al.*, Appellees.

### APPEAL FROM COOK.

Where there is nothing in the record indicating the time when a writ of *scire facias* was delivered to the officer, the legal presumption is, that it was delivered on its being issued. The officer is not required to indorse upon the writ the date of its delivery to him.

An officer's return of "not found" is sufficient, and it need not appear by the return that he was unable to make service of the writ during the whole time it was in his hands.

When a writ is served, the time when should be distinctly stated by the officer, so that it may appear whether the service was ten days before the return day. The return may be dated after the return day.

A proceeding to foreclose a mortgage by *scire facias* is at law, and is governed by the practice of courts of law, and not of courts of equity. No persons but the mortgagor, or, in case of his death, his executor or administrator, are required to be made parties to such a proceeding. The assignee in bankruptcy of the mortgagor is not a necessary party, aliter where a bill in chancery is filed to foreclose a mortgage. Assignees in bankruptcy, as well as subsequent purchasers and incumbrancers, are required to take notice of proceedings by *scire facias,* and to protect their own rights.

An assignee in bankruptcy succeeds to the interest of the bankrupt, and while the court appointing the assignee retains jurisdiction over him, it does not retain exclusive jurisdiction over lands, the title to which is transferred by its decree.

An application in another State by a mortgagor for the benefit of the bankrupt law, was not a proceeding having the effect of *lis pendens* as to parties having an interest in the lands mortgaged.

The application was not one for the sale of the lands or to affect the interest of mortgagees, and it did not hinder them from enforcing their rights. The decree in bankruptcy operated as a transfer of the bankrupt's interest, as if it had been transferred by deed, and did not affect the interests of other parties.

An acknowledgment of service on the back of a writ of summons will not authorize a decree by default. A summons and return thereon are necessary to give jurisdiction.

Chickering et al. *v.* Failes, surv., etc., et al.

The payment of taxes by a trustee, tenant or mortgagee, while their relations are not adverse to the *cestui que* trust, landlord or mortgagor, is not such a payment as is required by the statute of limitations.

Persons holding these relations must assume an adverse attitude in regard to the property, and the taxes paid by them must be paid in such attitude, to come within the meaning of that statute. After such adverse attitude has been assumed, all acts done by the person assuming it are by law presumed to be done in furtherance of such new attitude.

A decree of foreclosure, which is insufficient to bar an equity of redemption, is nevertheless sufficient claim and color of title under the statute, where it is not procured by fraud or in bad faith.

Bad faith, within the meaning of the statute, cannot be established by showing notice of the claims of other persons to the property, or by showing a knowledge of legal defects, which prevent the color of title from being an absolute one.

Where there is no fraud, and no proof showing that the color of title was acquired in bad faith, the court will hold that it was made in good faith:

The same requisites are required to establish claim and color of title under the ninth as under the eighth section of the statute.

To render the payment of taxes within the statute, they must be paid by the person having the claim and color of title.

A payment by executors is not sufficient, without it appears that the will under which they act, vests in them some title, or requires them to pay the taxes.

THIS is a cause in chancery on bill exhibited by appellants against appellees, for the purpose of redeeming two certain mortgages made by one Josiah E. McClure to Elijah K. Hubbard.

The bill alleges, that on the 13th day of July, 1836, said McClure was seized in fee of the tracts and lots of land situate in Cook county, State of Illinois, described as follows:

Undivided half of the south-west quarter of Section No. 20, Township 39 north, Range 14 east of third principal meridian; undivided quarter of the east half of the north-east quarter of Section No. 20, Township 39 north, Range 14 east of third principal meridian; undivided quarter of east half of north-west quarter of Section No. 36, Township 39 north, Range 13 east of third principal meridian; lot No. 8, in Egan's subdivision of a part of block 47, in School Section Addition to Chicago.

Said McClure being so seized, on that day executed a mortgage upon the two tracts of land first mentioned as above, to Elijah K. Hubbard, upon the terms specified in the mortgage.

On 28th day of October, 1836, said Hubbard released half of the tract of land secondly mentioned above, and in consideration of such release, said McClure executed to him a mortgage upon the two last mentioned tracts of land, to secure the part of the same indebtedness that then remained upaid.

On 26th day of May, 1839, said Hubbard, the mortgagee, departed this life testate, appointing by his last will and testament William H. Brown, S. D. Hubbard and H. Griswold Hubbard, the executors thereof, and trustees of the property of

which he might die seized, of whom William H. Brown and H. Griswold Hubbard qualified.

After the decease of Elijah K. Hubbard, and in April, 1847, David Lee, the testator and ancestor of the defendants, exhibited his will in the Circuit Court of Cook county, against the executors and heirs of the said Elijah K. Hubbard, stating, in substance, that the said executors had foreclosed the aforesaid mortgage upon the undivided half of the south-west quarter of Section 20, Township 39 north, Range 14 east, and that the same was acquired by the said Elijah K. Hubbard, in his lifetime, by money furnished him by the said Lee, and praying that the same might be conveyed to complainant by such executors, which was decreed.

And by deed bearing date July 31st, 1847, such executors conveyed that tract of land to Lee in pursuance of such decree.

Afterwards in March, 1849, Lee exhibited his bill in the same court against the same parties, and to the same substance and effect as to the eighth part of the east half of north-east quarter of Section 20, Township 39 north, Range 14 east, and praying a conveyance thereof from the said executors, which was decreed.

On June 30th, 1849, said executors conveyed the last mentioned tract of land to Lee, in pursuance of such decree.

The bill then states, that at the instigation and on behalf of Lee, the executors of Elijah K. Hubbard proceeded in the Cook Circuit Court, by *scire facias*, to foreclose the second mortgage of McClure, which is made Schedule B to the bill of complaint, and that upon the sale thereof, Lee became the purchaser of the premises for the nominal sum of one hundred dollars.

It then alleges, the decease of Lee, in January, 1853 ; having appointed Thomas H. Failes and Caleb O. Halstead the executors of his last will and testament, etc., leaving the other defendants his heirs at law, in whom became vested all the title to and estate in all the premises of which the said Lee died seized, and in whom the same now remains, and which is the same conveyed by the said McClure to Elijah K. Hubbard, by virtue of the above mentioned mortgages.

It then alleges, that McClure made large payments upon such mortgage indebtedness, leaving only due thereon, for principal and interest, upon the 10th day of March, 1847, a sum not exceeding $3,000.

It then alleges the title to the ten acres in the north-east quarter of Section 20, to be in complainants, by virtue of a conveyance by McClure, before his bankruptcy, to one Henry Fake, by Henry Fake to John S. Fake, and by John S. Fake to complainants, subject only to the aforesaid mortgage thereon.

Also that McClure, before his bankruptcy, conveyed to Wil-

liam Raymond one undivided half of the eighty-acre tract of land in the south-west quarter of section twenty, and took back a mortgage thereon at the time, which mortgage has become vested in the complainants by assignment.

It then alleges that McClure, in the month of May, 1842, was by the Supreme Court of the then Territory of Wisconsin, declared a bankrupt under the law of the United States, passed August 19th, 1841, and that Daniel H. Richards was then and there by such court appointed assignee in bankruptcy of the said McClure, and duly qualified, and assumed the duties of such office, and that Brown and Hubbard, executors, had due notice thereof.

And that afterwards, and on the 5th day of July, 1859, Richards, acting as such assignee, under the direction and order of the United States District Court for the District of Wisconsin, sold and conveyed to the complainants all the lands in the bill mentioned, whereby all the interest that McClure had therein at the time of his bankruptcy, and all that Richards thereby acquired, became the property of the complainants.

It then alleges a partition made between David Lee and the other owners thereof, of the two tracts of land situate in section twenty.

It then alleges possession of all the lands mentioned in the bill for the five years next preceding the filing of the bill, (Dec. 5th, A. D. 1859.)

Then a tender by complainants of $10,000 to defendants Halstead and Failes, on August 18th, 1859, for redemption of the mortgages, and their refusal to receive it, and denial of complainants' right to redeem such mortgages.

And an offer to pay all that may be due to defendants upon such mortgages, and interest thereon, and all taxes and assessments they have paid.

The bill then alleges, that the defendants, or some of them, claim to hold the title, discharged of the equity of redemption above stated, under various pretenses, viz.:

Those portions thereof, in the south-west quarter, and in the north-east quarter of Section No. 20, by virtue of certain proceedings to foreclose the mortgage thereon, by decree of strict foreclosure, in the Cook County Court; and an exemplification of which proceedings, are a part of the record in this case. And it is charged that these proceedings are utterly unavailable for the purpose of barring this equity of redemption, for the reasons following, viz.:

They were commenced after the title thereto, of McClure, mortgagee, had by his bankruptcy, vested in his assignee, who was not made a party to such proceedings.

Nor was John S. Fake made a party to such proceeding, although one John F. Fake was named a defendant therein. And the complainants claim their right to redeem, as grantees of a portion of the mortgaged premises, from both Richards and Fake.

Also, the decree was for a strict foreclosure, whereas the bill only prayed for a sale of the mortgaged premises, and for general relief.

It is further charged, that all the orders and the decree rendered in this foreclosure suit are absolutely and utterly void for want of jurisdiction in the court to render the same, inasmuch as it appears from the record of the cause, that so far as all parties interested in the subject matter of this cause are concerned, such decree is based entirely upon constructive notice of the pendency of the foreclosure by publication, and from the affidavit of non-residence filed therein, it does not appear that the said McClure, Raymond, or John F. Fake, are claimed to be non-residents of this State.

That there is no return of process by any sheriff, as to these parties, nor any process lodged with any sheriff to be served upon them. That the notice of publication made in the cause was insufficient.

The bill then alleges that the proceeding to foreclose the second mortgage, upon the remaining portion of the premises, is utterly void, as there was no service of *scire facias* upon McClure, the defendant therein. Nor a proper return of *nihil* upon two *sci. fas.* against him, and as David Lee, by whom such proceedings were instigated, and on whose behalf they were conducted, was the purchaser of the premises at the sale, by virtue thereof, he, and the defendants claiming under him, can claim no title under the same.

And further, Richards, the assignee in bankruptcy, was no party thereto, although in consequence of such bankruptcy, before the commencement of such proceedings, all McClure's title and interest in the premises became vested in Richards, his assignee.

It is then alleged, that the defendants claim title to the premises, discharged of the equity of redemption, claimed by the complainants, in consequence of a certain deed made by McClure to Brown and Hubbard, the trustees of Elijah K. Hubbard, bearing date May 11th, 1849, and it is charged that no title to, or interest in the premises passed by said deed, inasmuch as at the time said McClure made such deed, he had become divested of all title or interest he ever had therein, by virtue of his aforementioned conveyances to Henry Fake and to William Raymond, and of his previous bankruptcy; and further, that

such deed was obtained by the grantors therein, without any consideration, and by misrepresentation to McClure, of the terms and purport of the decree of foreclosure in pursuance to which it purported to have been made.

It is then alleged, that the defendants claim that the said equities of redemption are barred by lapse of time, and it is charged that the defendants have admitted the existence of the said mortgages, and the equity of redemption thereon, and by the aforementioned proceedings, to foreclose the same, as late as the month of March, 1847.

It then alleges, that those complainants are creditors of the said Josiah E. McClure, to a large amount, and that they have no means to obtain satisfaction of their said claims, except out of the aforementioned mortgaged premises, and the interest of his assignee in bankruptcy therein.

The bill then prays for an account to be taken of the amount due upon the aforesaid mortgaged premises, for a decree, allowing the complainants to redeem the same, and for general relief.

The answer of all the defendants admits the seizin of McClure, on or about July 13, 1836, of the undivided interest or shares in the three parcels of land, and also in lot eight in Egan's subdivision, as specified in the bill.

They also admit the execution of a mortgage by McClure to Elijah K. Hubbard, for nine thousand dollars, of the same date with said mortgage.

They also admit the release by Hubbard of a part of premises, Oct. 28, 1835, and the execution of the second mortgage by McClure, at the last named date, but whether said last mortgage was in consideration of the release, they do not know.

They admit probate of the will of Hubbard, and that Wm. H. Brown and H. Griswold Hubbard became executors and trustees of Hubbard, under the will.

They admit the filing of the bill in the Circuit Court of Cook county, April 26, 1847, by David Lee, charging a trust as stated in the bill, and a decree obtained thereon, under and in pursuance of which, said executors conveyed to David Lee certain premises, as mentioned in the bill.

They admit a second bill, filed by David Lee, in the same court, setting up a like trust, and a decree in that suit, about 19th March, 1849, by virtue of which, said executors, on or about 30th June, 1849, made another conveyance of real estate to said Lee, as stated in the bill.

They admit the issuing of a writ of *scire facias*, on or about 6th July, 1842, in favor of Brown and Hubbard, as executors, for the purpose of foreclosing the equity of redemption of

McClure, upon the last mentioned of the two mortgages mentioned in the bill—a judgment recovered in the Circuit Court of Cook county—an execution issued thereon—a sale of the property in that behalf mentioned thereon, to David Lee. But defendants deny that any facts or circumstances existed in reference to said suit on *sci. fa.*, by way of things done or omitted to be done, by reason whereof said judgment or sale thereon became or was void in law, as subsequently charged in said bill, but they insist said judgment was in all respects good and valid in law, and the sale upon execution aforesaid, effectual upon non-redemption, and the sheriff's deed thereon to Lee, to vest in him the title to the mortgaged real estate so conveyed, clear of all equity of redemption forever.

They admit the death of Lee, testate, as stated in the bill, and that Thos. H. Failes and Caleb O. Halstead (since deceased) were duly appointed executors, on proving said will.

The defendants know nothing about payments by McClure and Hubbard, nor as to the balance alleged in the bill, of $3,900 only, on 10th March, 1847, and they therefore deny those statements of the bill.

The defendants know nothing of the conveyance of premises, or any part, by McClure to Henry Fake, or by him to John S. Fake, or by him to complainants, nor by McClure to Wm. Raymond, and his mortgage back for $1,750, or that complainants had become the owners thereof; and they therefore deny all of said facts so stated in the bill.

The defendants have no knowledge as to the facts stated in the bill, touching McClure's bankruptcy, his discharge, assignment to Daniel H. Richards, or of the title derived from Richards, the assignee, by the complainants, and they deny, therefore, all of said facts and statements.

Deny the necessity that Richards should have been made a party to the *sci. fa.*; or the foreclosure suit by bill, on either mortgage, effectually to preclude the equity of redemption.

Admit the partition suits set up in the bill between Wm. S. Johnston and the executors and heirs of David Lee, and also the other prior partition between said Wm. S. Johnston and David Lee, in his lifetime, with other part owners, as stated in the bill.

The defendants, who are the heirs at law of David Lee, claim an indefeasible title to the premises, by descent from him, discharged of the equity of redemption claimed in the bill.

Admit the heirs and executors of David Lee have been in actual possession the five years mentioned in bill, but deny that premises were, prior to that time, vacant and unoccupied. On the contrary, insist that for more than seven years before the

commencement of this suit, the executors and heirs, and David Lee personally, prior to his decease, had been in actual possession of the premises, and that they had for said whole period of seven successive years, and more, held the lands and tenements in actual possession, under claim and color of title made in good faith, and had also during all said time of seven years and over, paid all taxes legally assessed on said lands and tenements, and that by the statute of this State they are to be held and adjudged to be the legal owners of said lands and tenements to the extent and according to the purport of their paper title thereto, that is to say, in fee.

Admit that defendants in this suit are non-residents of Illinois.

Deny the statements by complainants of an offer to redeem the premises from the mortgage, and deny the right of redemption claimed by them.

Defendants insist that the title of Brown and Hubbard, as executors, to the two undivided parcels of land in the south-west and north-east quarters of Section 20, Township 39 north, Range 14 east, became absolute, and were cleared and divested of all equity of redemption by the decree for strict foreclosure aforesaid, and that Brown and Hubbard, as executors and trustees as aforesaid, by the two deeds subsequently executed, one dated 31st July, 1847, and the other 30th June, 1849, each of said deeds being executed in pursuance of decrees of the Circuit Court of Cook county, in chancery sitting, for that purpose entered and made, at the instance of David Lee, on his bill filed therefor, said decrees requiring such conveyances, did convey the said last above described premises to David Lee in fee.

Defendants insist that the decree for strict foreclosure cannot be impeached or attacked by complainants in this suit, or in any collateral proceeding between other parties not parties to the original suit, and is to be held valid until properly reversed by writ of error or appeal, duly prosecuted by the parties thereto.

Defendants insist that the *sci. fa.*, judgment, execution, sale thereon, and sheriff's deed to Lee, effectually and forever put an end to and foreclosed the equity of redemption of Josiah E. McClure, or any claiming under him, to the other premises mentioned in the second of McClure's mortgages, dated Oct. 28, 1836, and that Lee's title by and under the sheriff's deed aforesaid, is good and indefeasible in law and equity.

Deny all the errors and insufficiencies in the bill charged against the proceedings on *sci. fa.*, foreclosure, judgment and sale, as stated in the bill.

Deny that either decree or judgment for foreclosure can be impeached or inquired into collaterally, or that any necessity

existed for making the assignee in bankruptcy of McClure, a party by name to any of the proceedings in those suits, it not being charged that the complainants in those suits had any actual notice of the proceedings in bankruptcy.

Defendants insist the claim of the complainants to redeem the premises, or any part thereof, is precluded by the great lapse of time since the accruing of the title of defendants, and those under whom they claim, in which respect the claim of complainants is stale, during all which time so elapsed, complainants have been lying by and acquiescing (they and those they claim under) in the continued possession, title and ownership of David Lee and his heirs.

Defendants insist that in any event, complainants' claim is barred by the limitation of two years being a statutory limitation contained in the eighth section of the act entitled " An act to establish a uniform system of bankruptcy throughout the United States," approved August 19th, 1841, whereby it is enacted, among other things, that " no suit at law or in equity shall in any case be maintainable by or against such assignee, or by or against any person claiming an adverse interest touching the property or rights of property aforesaid, in any court whatsoever, unless the same shall be brought within two years after the declaration and decree of bankruptcy, or after the cause of suit shall first have accrued."

The defendants insist that in one year from the date of the first mortgage of McClure, (13th July, 1836), the whole debt, secured by both mortgages fell due, that is to say, on 13th July, 1837 ; and the mortgaged estates and lands in each mortgage specified became forfeited and vested absolutely in the mortgagee and his heirs and assigns, absolutely. Since which, over twenty-one years has elapsed, during all which no claim of redemption was set up by the mortgagor, or any person claiming under him, notwithstanding the mortgagee, or his heirs, have been all that period engaged in exercising acts of control and ownership over the premises, paying taxes as on their own for the whole period, managing, laying out, fencing, and improving, selling and transferring the same as their own, and exercising various acts of different kinds, at different times, as owners are wont to do.

The defendants admit the execution of the deed of McClure to Brown and Hubbard, done by procurement of Brown, but deny all fraud therein, and all misrepresentation charged, as well as want of consideration.

Defendants rely and insist upon the statutory limitation as a bar to complainants' claim, sections six and seven of the statute entitled " An act for the limitation of actions, and avoiding vexatious law suits," approved February 10, 1827, and in force

by re-enactment of the legislature of Illinois, ever since and now.

Defendants insist that the bill is multifarious, and on all the points made by the answer they pray the same advantage as if they had demurred to the bill.

The defendants. also insist that the complainants are barred and precluded from asserting title, or any right of redemption, by the fact which these defendants affirmatively allege, that they, and those under whom they hold and claim, have paid all taxes legally assessed upon the premises for more than seven successive years, to wit, for twenty years and over; they, the said defendants, and those under whom they claim, all of said period having and holding under color of title made in good faith, which. fact, by the statutes of this State in force during all of said period, constitutes a limitation to the bringing of any action, or asserting and exercising any right of redemption in mortgage cases, by virtue of the second section of the act entitled " An act to quiet possessions and confirm titles to lands," approved March 2, 1839, and also by virtue of the Revised Statutes of Illinois, 1845, chapter 24, section 9, entitled " Conveyances," the said lands being vacant and unoccupied.

The answer denies all combination and confederacy.

To which a replication was filed.

Upon hearing on bill, answer and proofs, the court below dismissed the bill.

GOODWIN, LARNED & GOODWIN, for Appellants.

MATHER & TAFT, for Appellees.

WALKER, J. Was the proceeding, by *scire facias*, sufficient to bar the equity of redemption, in the premises embraced in the second mortgage executed by McClure to Hubbard? It is insisted that it was not, for several reasons. First, because it is alleged that the returns to the writs did not give the court jurisdiction to try and determine the case. The sheriff's return to the first of these writs was, " Josiah E. McClure not found, November 7th, 1842." This was the return day of this writ. The return of the second was this: " The within named Josiah E. McClure not found, March 25th, 1843." This latter writ was tested on the 18th day of January, 1843, and was returnable to the term to be held on the first Monday of March, and it was returned during that term. There is nothing in the record which indicates when the writs came to the hands of the officer. But in its absence, the law will presume that they were delivered at the time they were issued. Neither the statute,

nor the practice require the officer to indorse the date of their delivery to him, and we can perceive no necessity for such evidence. The statute has only required service, or two *nihils*, to authorize the court to proceed to hear and determine the case.

It is again urged, that these returns only imply, that the defendant was not found on the day named in the return. It is not usual, if it has ever been done, for the officer to certify that he has not been able, during the whole time the writ was in his hands, to find the defendant. Mr. Justice Blackstone, in his Commentaries, vol. 3, p. 283, says, if the sheriff is unable to find the defendant, he returns "that he is not found, *non est inventus.*" The language of these returns is, in substance, and almost precisely the same as that required by this authority. They clearly conform to the requirements of the law, and are strictly in conformity to the general practice, and must be held sufficient. If the return is, that service has been had, then it should distinctly appear at what time, so that it may appear whether it was as long as ten days before the return day of the writ.

It is likewise urged that the judgment is invalid, and therefore fails to bar the equity of redemption, because Richards was not made a party to the proceeding. Had this been a proceeding in equity, this would be undeniably true. But as it is a proceeding given and regulated alone by statute, and is in a court of law, the conclusion is irresistible, that it was the design of the legislature, in the absence of a requirement that it should be in the form of an equitable proceeding, that it should be governed by the practice of the courts of law, and not of equity. This court held, in the case of *The State Bank* v. *Wilson,* 4 Gilm. 57, that the statute authorizing this mode of foreclosure, has given the judgment the effect of a recovery at law, against the mortgaged premises. That it creates no new liability, but is merely a means of rendering a former lien available. And that, "the purchaser under the judgment acquires all the right in the mortgaged premises, which the mortgagor had, at the time of the execution of the mortgage, entirely unaffected by the title or lien of purchasers or incumbrancers subsequent to the recording of the mortgage, or with notice, who in order to save themselves, must redeem as in case of an ordinary sale on execution at law."

In all suits at law the proceedings are confined alone to the parties to the transaction. In no proceeding in that form, are subsequent purchasers or incumbrancers ever made parties, but are required to take notice of the proceeding, and failing to do so, their rights are not protected. A plaintiff after recovering a judgment is not required to give notice to persons having sub-

sequently acquired rights, before he can proceed to sale and satisfaction. He may sell, and they, to preserve their rights, must redeem within the period limited by the statute. This then being a proceeding and judgment at law, the rights of the parties must be governed by the rules of law and not of equity. The statute having authorized a foreclosure in this mode, and not having required any person but the mortgagor and mort- gagee, or, in case of their death, their executors or administra tors, to be made parties, and the statute having been complied with, it must be held sufficient.

The decree in bankruptcy was rendered in May, 1842, and the last writ of *sci. fa.* was sued out in January, 1843, and judgment was rendered in the month of March following. Thus it will be observed, that, by the operation of the bankrupt law, McClure's equity, by the decree, had passed to Richards, before the judgment was rendered; in fact, before the proceeding was instituted by the *scire facias.* By the decree in bankruptcy, Richards was appointed assignee, and succeeded, by that act, to McClure's interest in the land which passed to him; and how can it be said, that the District Court still retained exclusive juris- diction over the land? It no doubt still had jurisdiction and power over the assignee, and might affect the title transferred to him, or the title of other parties, by further proceedings, but having transferred the bankrupt's title in the land to the assignee, its exclusive jurisdiction over the land itself, if it ever had any, was at an end.

But even if this were not so, the proceeding in bankruptcy was in a different State, and parties there having an interest in the land were not chargeable with the notice of *lis pendens.* And as the application of the mortgagor was for the benefit of the bankrupt law, and not for the sale of the land, or any pro- ceeding to affect the mortgagee's interest, no reason is perceived why a *sci. fa.* might not have been sued out whilst his applica- tion was pending. The legal effect of that decree, as far as it related to this land, was simply to pass the mortgagor's equity of redemption, precisely as if it had been transferred by deed. It appears then, that, in any point of view, this proceeding by *sci. fa.* must be held to have been regular, and the sale and sheriff's deed, under that judgment, were sufficient to bar all equities of redemption in the lands embraced in the second mortgage.

In the case of the bill to foreclose the mortgage first given, there was no return indorsed upon the summons. It only con- tained the indorsements signed by a portion of the defendants, acknowledging service, without date, but whether the writ was ever in the hands of the sheriff, fails to appear. In the case of

*McDaniels* v. *Correll*, 19 Ill. 226, it was held by this court, that a summons and return, under the statute, are expressly required, to give the court jurisdiction of the persons of non-resident defendants. Without that formality, they were held not to be properly before the court, and all its proceedings, as to them, were void. In that case, there was publication, but no summons or return. In this case, there was the writ, but no return, which brings it fully within that case, which is decisive of this question. Therefore, for the want of jurisdiction of the persons of the non-resident defendants, their equity of redemption was unaffected by the decree of strict foreclosure, and still subsists, unless barred by the statute of limitations.

It is, however, urged with much earnestness, that the mortgage and the decree of strict foreclosure are color of title, which, with seven years' payment of taxes, operates as a bar to the redemption. In proceedings in chancery, the statute may be interposed and relied upon, as in an action of law. Whilst it is only in analogy to the law, yet it, in the same manner and to the same extent, follows the law in its application. Then, is a mortgage and decree of strict foreclosure color of title? By the mortgage deed the legal title passes to the mortgagee, but in equity, the right of redemption remains in the mortgagor, even after condition broken. But at law, after condition broken, the mortgagee may bring his ejectment and recover possession. The mortgage is a deed of conveyance with a condition annexed, and purports on its face to convey the title, but the condition authorizes the mortgagor to defeat the title thus conveyed and to reinvest it in himself, by a performance of the condition. After a failure to perform the condition, the title apparently becomes absolute in the mortgagee, and is clearly color of title.

As equity still permits a redemption notwithstanding a breach, the mortgagee is regarded as holding the title in trust for the mortgagor, to be divested when the money is paid. It is a rule, of general application, that a trustee shall not be permitted to rely upon the efflux of time, under the statute of limitations, so long as that relation exists. Until it is terminated, he is estopped to interpose the bar. So of a tenant who acquires possession from a landlord. In each of these cases the possession will be held subordinate to, and under the title of, the mortgagee or the landlord. The possession so acquired, and whilst so continued, is held not to be hostile. So of the payment of taxes. Whilst these several relations exist, the possession and payment of taxes cannot be held to be for the benefit of the occupant, and cannot in good faith be relied upon for hostile purposes against the mortgagor or landlord.

To bring themselves within the good faith of this statute,

they must first surrender the possession if it has been obtained, or, as against the mortgagor, notice must be given that payment of taxes is claimed to be in the right of the mortgagee independent of the mortgage, or the relation must be apparently terminated in some other mode. After a foreclosure, or an effort to foreclose the mortgage, by decree or deed which purports to have that effect, the presumption then arises that all acts done in reference to the property, are done under a claim of ownership, by the mortgagee, and referred to his color of title. If they are such as is required by the statute, and for the period of time designated by the statute, they would form a bar to a redemption.

It is also urged that as Richards, Fake and Raymond, were not properly before the court, and as their right to redeem was not barred by the strict foreclosure of this mortgage, that Lee in his lifetime, and his heirs since his death, were chargeable with notice, and cannot be permitted, in good faith, to rely upon the statute, to bar the right of redemption. It is a rule of uniform application, that notice of the claim of other persons does not apply under the statute of limitations, as in case of subsequent purchasers or incumbrancers, under the registry act. In the case of *Woodward* v. *Blanchard*, 16 Ill. 433, this court recognized and acted upon this doctrine to its full extent. In that case it was held, that an auditor's deed, to a purchaser of land at a sale for taxes, although the law under which the sale was made was unconstitutional, and the sale consequently void, yet in the hands of the purchaser, unless chargeable with bad faith, was color of title, and might be relied upon as a bar, when the other requirements of the statute were satisfied. The mere fact that the sale was void, was held not to be evidence of bad faith. Again, in the case of *Laflin* v. *Herrington*, 16 Ill. 301, it was held that title absolutely void in its inception, where held by a grantee of the purchaser at the void sale, unless chargeable with fraud, is claim and color of title made in good faith, within the meaning of the statute.

Whilst these decisions were under the eighth section of the conveyance act, no difference is perceived between it and the ninth section of the same act, as it regards this question. It seems to be altogether immaterial, whether the decree was sufficient or not, to bar the equity of redemption, to render it color of title. The effort was made to bar it, and the decree was entered for that purpose, and in the absence of fraud, or proof showing that it was in bad faith, we must hold that it is color of title made in good faith. If the decree was not warranted, it was no more bad faith for the mortgagee to rely upon it as color of title, than for a purchaser at an unconstitutional and void

sale for taxes. It must be held that this effort to foreclose was such an act as authorized the mortgagee to act under claim in himself, and not subordinate to the title of those claiming the equity of redemption. That proceeding manifested to them and to the world, that he no longer recognized them as having any rights in the premises. That act was hostile to their rights, and his subsequent acts must be regarded in the same light.

Then was there a payment of the taxes assessed upon these premises by the person holding the color of title, for the period of limitation? Whilst it is alleged in the bill and admitted in the answer that the executors of Hubbard held the lands under his will as trustees for the creditors and heirs, and must therefore have held the legal title, yet they paid the taxes in the name of Lee and for his benefit, and whatever his equities might be, he was not within the provisions of the ninth section, as he held no paper title. The payment, therefore, made by them in Lee's name, and for his benefit, before they conveyed to him, did not concur with the color of title. That was in the executors of Hubbard, after his death, until they conveyed to Lee, and to have come within the statute, the payment should have been made in their name.

And the record fails to show that Lee's executors held the fee, or any other interest in the premises after his death. It however, does appear that after his death, the taxes were paid in the name of his executors. In the absence of proof, we must conclude that the lands were devised to his heirs, or those whom he regarded as having claims on his bounty, and to have rendered the payment of taxes in the name of his executors available, it should have appeared that the will vested in them some title, or at least required them to pay the taxes until the estate was settled. In the absence of such proof, the payments thus made, cannot be regarded as concurring with the color of title.

It then remains to inquire, whether the payment of taxes by Lee, concurred with the color of title vested in him, for seven successive years. Hubbard's executors conveyed the premises to him, on the 30th of May, 1849, and the papers were delivered by Brown, the agent of Lee, to Kerfoot, the agent of Lee's executors, in the month of February, 1855, and if Lee had only died immediately previous to that time, it would have been something less than six years. And Kerfoot testifies, that after receiving the papers, he paid the taxes for Lee's executors. Brown testifies, that he paid, in the name of Lee and of his executors, by which we infer that until Lee's death, he paid in his name, and afterwards in the name of the executors. So that we must conclude that Lee had died before Brown ceased

34

to pay taxes, but the evidence fails to show what length of time. In any event it cannot be seen, that the payment of taxes concurred with, or was made in the name of the person holding the color of title for seven successive years prior to the commencement of this suit. Had it appeared that payment was continued after the death of Lee, by the persons holding the color of title inherited or devised to them by Lee, whether as trustees, or in their own right, then it would have sufficed. The proof fails to show that fact, and it must be held that the proof in this record fails to bring the lands embraced in the first mortgage, within the ninth section of the conveyance act.

The decree of the court below is affirmed, in dismissing the bill as to the undivided fourth of the E. ½ N. W. 36, 39 N., 13 E., and lot 8 in Egan's subdivision of block 47, School Section Addition to Chicago, and is reversed and remanded as to the undivided half of S.W. 20, 39 N., 14 E., and undivided eighth of E. ½ N. E. 20, T. 39 N., R. 14 E., embraced in the mortgage of July 13th, 1836, for further proceedings not inconsistent with this opinion, and that each party pay one-half of the costs in this court, and in the court below.