SAMUEL L. HINKLEY *et al.*

*v.*

COGGSWELL K. GREENE.

| 52 | 223 |
|----|-----|
| 143 | 287 |
| 52 | 223 |
| 160 | 261 |
| 52 | 223 |
| 163 | 500 |
| 52 | 223 |
| 172 | 366 |

| 52 | 223 |
|----|-----|
| 186 | ¹242 |

1. LIMITATION ACT OF 1839—*what constitutes color of title.* A deed of conveyance, which purports to convey title, executed by a purchaser at a sale under a judgment of foreclosure of a mortgage upon the premises, will constitute color of title in the grantee, notwithstanding the judgment of foreclosure be void.

2. SAME—*in what character of proceedings the statute may be invoked.* The bar of the statute may be invoked as fully in a suit in equity as in an action at law. So in a suit in chancery by a junior mortgagee against the grantee of the purchaser under foreclosure of the prior mortgage, to redeem from the sale under the prior mortgage, and to foreclose the junior mortgage, the defendant may rely upon the statute to prevent the granting of the relief sought.

3. SAME—*payment of taxes by one tenant in common under color of title in himself.* Under the act of 1847, in respect to joint rights and obligations, one tenant ·in common of land may pay the taxes upon his own interest, without reference to his co-tenant's rights in the premises.

4. And where tenants in common jointly mortgage their land, and upon foreclosure and sale, one of the tenants in common becomes the grantee of the purchaser under the foreclosure, by deed purporting to convey the whole tract, the payment of taxes by such grantee, under claim and color of title thus acquired, the land being vacant and unoccupied, will amount to an ouster of his co-tenant, and will enure to his own benefit under his color of title, under the second section of the act of 1839.

5. SAME—*who may become a purchaser.* The fact that the grantee of the purchaser under the foreclosure was a mortgagor, did not place him in such a position as forbade him acquiring the title in that manner; his purchase would not operate as a redemption, but he could rely upon his deed as color of title, which might ripen into a complete bar under the act of 1839, and afford protection to the holder even as against his former co-tenant, or the grantees or mortgagees of the latter.

APPEAL from the Superior Court of Chicago; the Hon. JOHN A. JAMESON, Judge, presiding.

This was a suit in chancery, instituted in the court below by Coggswell K. Greene, against the unknown heirs of Henry Moore, deceased, and various others.    The facts are fully presented in the opinion of the court.

Mr. J. A. CRAIN, for the appellants.

Messrs. KNOWLTON & JAMIESON, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that on the 24th of June, 1835, Wm. B. Ogden conveyed to Samuel L. Hinkley and Henry Moore, lots 31 and 32, in Kinzie's addition to Chicago.   The sale was for $5000, one-fourth was paid in hand, and the balance to be paid in one and two years, in equal installments, with ten per cent interest.

The cash payment was made by Hinkley, and Moore gave to him his note for one-half, but it was never paid. To secure the deferred payments, Hinkley and Moore executed a mortgage to Ogden on the premises, which was duly recorded.

On the 27th of November following, Ogden sold and assigned the bond and mortgage given by Hinkley and Moore, to secure the deferred payments, to Charles Butler, of the city of New York. This assignment was not on the bond and mortgage, but on a separate paper. A similar assignment of the same instruments was made on the 25th of August, 1838, by Butler to one Samuel Hinkley. After the purchase by Hinkley and Moore, the latter, on the 3d of July, 1837, gave his bond to complainant for $4500, payable on or before the 1st of January, 1847, at Moore's option, with interest at seven per cent till paid, payable the 1st of January and July of each year. At the same time he executed a mortgage on his interest in the lots purchased of Ogden, to secure the payment of the principal and interest of the bond, which was duly recorded.

No portion of the principal or interest on the bond given by Hinkley and Moore to Ogden, and assigned, having been paid, on the 15th of January, 1839, a *scire facias* was sued out on the mortgage, in the name of Ogden, for the use of Hinkley, the assignee. The writ was issued from the Cook circuit court, returnable to the next March term, but it was returned "not found." On the 4th day of the following April an *alias scire facias* was issued, returnable at the next term of the court, and it was likewise returned "not found." A special term of the court was held on the 13th of May, 1839, when a judgment was rendered foreclosing the mortgage and ordering a sale of the lots. On the 18th of June following, a special writ of *fieri facias* was issued on the judgment and was placed in the hands of the sheriff, and he, having advertised the property, on the 30th day of that month sold it, each lot separately, and Samuel Hinkley became the purchaser, and the sheriff issued to him a certificate of purchase.

15—52ND ILL.

Afterwards, on the 12th day of November, 1840, the sheriff conveyed the premises to Samuel Hinkley; but the latter had previously, on the 12th of November, 1839, sold and conveyed the premises by quit-claim deed, to Samuel L. Hinkley, for $4000, which was, on the 8th of July, 1843, duly recorded. This deed contains a substantial covenant against himself, his heirs, or persons claiming under him. After Samuel L. Hinkley purchased, he paid all taxes on these lots until the spring of 1848, during which time the premises were vacant and unoccupied.

At this latter period, he took actual possession of the lots by his tenants, and he, or they, and his grantees, have continued the possession until this suit was commenced, and S. L. Hinkley, or those claiming under him, paid all taxes legally assessed on the premises from the time possession was taken.

On the 27th of November, 1858, appellee filed this bill, against the unknown heirs of Moore, Ogden, Butler, the two Hinkleys, and the unknown heirs of James B. Campbell, for the purpose of foreclosing the mortgage executed to him by Moore, on his interest in the lots. Subsequently, he filed an amended bill, and new parties were made and answers were filed. Samuel L. Hinkley set up his deed from Samuel Hinkley, as claim and color of title, and the payment of all taxes on the lots for more than seven years, while they were vacant and unoccupied, and insists upon the bar of the second section of the statute of 1839, and the payment of all taxes under the same color of title, for more than seven successive years after he took possession of the premises, and sets up and relies upon the bar of the first section of the same act. Willard, in his answer, sets up the same facts, and relies upon the statute, as a purchaser from Samuel L. Hinkley. Smith answered and required proof of the allegations of the bill.

A hearing was had on the bill, amended bill, answers, replications, exhibits and proofs, and the court granted the relief sought by the bill. The case is brought to this court on appeal, and errors are assigned, that the bill should have been

dismissed, the decree is too large, and in decreeing in favor of complainant.

. There are several questions presented by this record, but the most material is, whether appellants were in a position to avail themselves of the bar of the statute and have entitled themselves to its protection. It has been held by numerous decisions of this court, that a deed which, on its face, purports to convey title, constitutes claim and color of title, and that it is not essential the party so claiming should trace title to, and connect himself with, its original source. To do so, by regular and properly executed and authenticated deeds, would constitute, in most cases, paramount, and not color of title. The deed, then, from Samuel to Samuel L. Hinkley was, under the statute, claim and color of title; and having paid all taxes after he took possession, by himself and those holding under him, a bar was created under the first section of the statute.

But it is insisted that Hinkley was not in a position to avail of the bar. It is first urged, that the foreclosure by *scire facias* against Hinkley and Moore was absolutely void, and hence the bar of the statute can not be interposed. It is also insisted, that as the last writ of *scire facias* was not returnable to the next term, the court failed to acquire jurisdiction, as no power existed in the court to issue a writ returnable to the same term, and there not having been two *nihils* to writs returnable to different terms, the judgment of foreclosure was a nullity. Admitting this to be true, still it does not necessarily follow that the statute would not become a bar in favor of a subsequent purchaser from the vendee at the sheriff's sale.

In the case of *Woodward* v. *Blanchard*, 16 Ill. 433, it was held, that an auditor's deed to a purchaser of land at a sale for taxes, although the law under which the sale was made was unconstitutional, and the sale consequently void, in the hands of the purchaser, unless chargeable with bad faith, was color of title. In the case of *Laflin* v. *Herrington*,

228          HINKLEY *et al. v.* GREENE.          [Sept. T.,

Opinion of the Court.

16 Ill. 301, it was held that title, absolutely void in its inception, when held by the grantee of the purchaser at the void sale, unless chargeable with fraud, is claim and color of title. These decisions are in point, and must govern this question. In this, as in the latter of those cases, Samuel L. Hinkley bought of the purchaser under the judgment which is claimed to be void, and we fail to find any facts in this record to charge Samuel L. Hinkley with fraud or bad faith. He purchased and paid what seems to have been a fair consideration for the property.

It is true, those cases were at law, while this is in equity. But in the case of *Chickering* v. *Failes*, 26 Ill. 507, it was held that the bar of the statute could be invoked as fully in proceedings in equity as at law; that in each forum the statute would receive the same interpretation and application, and we must, then, hold that, whether the judgment of foreclosure is void or not, Samuel L. Hinkley can not be affected by it, as he purchased of the grantee of the sheriff under that judgment.

It is next urged that the purchase by Samuel L. Hinkley from Samuel, after the foreclosure and sale, and before the redemption expired, only operated as a redemption from the sale and mortgage to Ogden; that Samuel L. Hinkley, being a mortgagor, could not purchase, but could only redeem. We are aware of no legal principle which prohibits a defendant from buying the land from the purchaser under a judgment, and taking an assignment of the certificate of purchase or a deed of conveyance. We perceive nothing fraudulent, immoral, or otherwise against the policy of the law in such a transaction, in itself. *McCagg* v. *Heacock*, 44 Ill. 476. But in this case, whatever Hinkley's duty to Ogden, or those holding under him, might have been, no moral or legal obligation to Moore required him to pay Moore's part of the debt, or to compel him to redeem Moore's half of the land, much less to protect appellee's interest in, or claim to, Moore's property.

Appellee had no claim on Hinkley. His only rights were against Moore and his property.

If any obligation arose, it was after he made the redemption, as the law usually infers that when a tenant in common purchases an outstanding title, or removes an incumbrance on the common property, it is for the benefit of the estate, and the other tenant in common may avail himself of the benefits acquired, by contributing his proportion of the cost. But this is under the limitation that he does so in a reasonable time.

But even if appellee could have treated Hinkley's purchase as a redemption, it could only be upon the condition that he refunded to Hinkley his proportion of the money he paid to prevent the purchaser from acquiring the title. Moore owed all of his share of the purchase money for the land, but of the fact that he had not advanced anything on the first payment appellee is admitted to have been uninformed, and hence he, by his mortgage, cut off Hinkley's lien on Moore's portion of the land, to have the purchase money advanced by him refunded. But appellee was notified by the record that both Hinkley and Moore had purchased of Ogden, and mortgaged the premises to pay the balance of the purchase money. He is chargeable with notice that Moore owed his portion of that amount on the lots. How, then, could he claim that the debt was Hinkley's, and he was bound to pay Moore's share, and render his part of the lots liable to appellee's mortgage? Appellee, to render his mortgage availing, should have filed his bill to foreclose, and offered to refund the sum paid by Hinkley to redeem Moore's interest in the lots, and such a bill should have been filed in a reasonable time. His claim, whatever it may have been in its inception, does not commend itself to the favorable consideration of the court after lying dormant for nineteen years. In the meantime, by the growth of the country and the city, if not by improvement, the property has greatly enhanced in value. Hinkley has held it and treated it as his own, and it would be hard and inequitable, after such a lapse of time, to compel him to lose the money

he paid for Moore's interest, and lose the land for which it was paid. What has already been said disposes of the proposition that appellants did not set-up in defense, that they were *bona fide* purchasers. The fac's are disclosed in their answer, from which the rights of the parties must be determined. Especially the bar of the statute rendered such a defense unnecessary, as that disposes of the question of the foreclosure or redemption by appellee.

It is urged that Samuel L. Hinkley, when he paid taxes on the whole tract, only performed a duty which the law imposed on him as a tenant in common with Moore. By the act of February 16, 1847, sec. 1 (Gross' comp. title, Joint Rights and Obligations) it is enacted that tenants in common of any real estate in this State shall be authorized to pay their respective individual shares of taxes accruing thereon, according to their interests therein. It will be perceived that, under this enactment, even if Samuel L. Hinkley had not taken possession under claim and color of title, he was in nowise, either morally, legally or equitably bound to pay on Moore's third of these lots. And this being so, nothing can be claimed from the fact that they were previously tenants in common. Had he not purchased of Samuel Hinkley, and no foreclosure had been had, and he had gone into possession as a tenant in common, it would have been otherwise, as he would then have been in the receipt of the rents of the property of the tenant in common, and would have been required to pay the taxes from that fund; but here, the lot was vacant until he had paid more than seven years.

In the case of *Geowey* v. *Urig*, 18 Ill. 238, it was held that the conveyance of a whole tract of land by one of several tenants in common holding the tract, followed by adverse possession by the purchaser, amounts to an ouster or disseizin of the co-tenants, and, if complied with, the statute will bar an action or entry by the other co-tenants. And, in principle, we can see no difference, where tenants in common jointly mortgage their property, and proceedings to foreclose are

commenced, judgment rendered, the property sold under it, and one tenant in common buys from the purchaser under the judgment, and a person who purchases from one of several tenants in common, and receives a deed purporting to convey the whole tract. In either case, the possession is adverse, the claim, as manifested by the deed, is of the entire property, and so is the payment of taxes. It will be observed that *Goewey* v. *Urig, supra,* places tenants thus situated on the same footing as other persons. If, however, a tenant in common did not hold claim and color of title to the whole tract, it would, no doubt, be otherwise, under the statute. In this case, Samuel L. Hinkley and his grantees have shown claim and color of title, the necessary possession and payment of taxes, to render the bar created by the first section of the act availing. The court below, therefore, erred in decreeing a foreclosure of appellee's mortgage, and the decree must be reversed and the cause remanded.

*Decree reversed.*

At the September term, 1870, of this court, a petition for rehearing was filed on behalf of the appellee, whereupon the following additional opinion was delivered:

Per CURIAM: We have been asked by a petition for a rehearing, to review the decision rendered at the last term in this case. We have done so, with care, and see no reason to revise the decree then rendered. It is urged, that the relation of tenants in common between Samuel L. Hinkley and Moore, or his assigns, was not terminated by the ineffectual effort at a foreclosure, and hence Greene, as Moore's mortgagee, has the right to foreclose the mortgage given by Moore. If it be conceded that the foreclosure was void, still it does not follow that the deed from the purchaser at the sheriff's sale was not claim and color of title. It was held in *Chickering* v. *Failes,* 26 Ill. 507, that an effort at a strict foreclosure of a mortgage, which was void, still amounted to claim and color of title,

unless there was fraud ; that such an act manifested to the holder of the equity of redemption, and to the world, that the mortgagee recognized them as no longer having any interest in the premises. That act was hostile to their rights, and his subsequent acts were regarded in the same light.

Afterwards, in the case of *McCagg* v. *Heacock,* 43 Ill. 153, the same rule was announced. In that case, it was held that a conveyance from the mortgagor to the mortgagee of the premises showed such an intention, and, in the absence of oppression or bad faith, constituted color of title. If, in this case, the foreclosure had been regular, and the time for redemption had expired, and Samuel had sold to Samuel L. Hinkley, no one would doubt that the latter would have acquired the fee, and Moore's equity of redemption from the Ogden mortgage would have been effectually barred, and the same would have been true as to Greene, his mortgagee. If, then, a regular foreclosure, judicial sale, sheriff's deed, and a conveyance from the purchaser would have produced that result, it must follow that the effort to foreclose by judgment, sheriff's sale, and the conveyance to Samuel L. Hinkley, although irregular, had the effect of producing color of title, unless it was tainted with fraud or bad faith. The purchase from Samuel Hinkley, and payment of taxes under that deed, manifested to Moore, or those claiming under him, that Samuel L. Hinkley was claiming adversely and in hostility to them and the whole world. These acts, of themselves, were hostile, and amounted to an ouster. Under ordinary limitation laws, barring the action of ejectment, or other real action, possession is regarded as the hostile act, but under the second section of the act of 1839, claim and color of title and payment of taxes, under a deed taken by one tenant in common from a stranger, in good faith, and conveying the whole land, the co-tenant having knowledge of such adverse claim and payment, are made hostile, and where actual possession has been taken under such deed, and the requisite payment of taxes, it may be set up as a protection to such

possession, even as against the original co-tenant. And in this case we, under the circumstances, must infer that the co-tenant had such knowledge. At the common law, the possession of one tenant in common was held to be the possession of all the tenants. But in the case of *Goewey* v. *Urig*, 18 Ill. 238, it was held that the possession of one tenant in common under a deed purporting to convey the entire premises, and the requisite payment of taxes, amounted to an ouster, and created the bar of the statute against his co-tenants.

Then, if possession and payment of taxes under a deed purporting to convey title amounts to an ouster of co-tenants, under the first section, the payment of taxes under a similar deed must be held, under the second section of this act, to have the same effect. If bad faith were shown, however, it would not produce that result. It then follows that the purchase of what was supposed to be a paramount title under an irregular effort to foreclose Ogden's mortgage, and the payment of taxes thereunder, or such payment and possession, were acts of such hostility as amounted to an ouster of Moore or his assigns, and when continued for the statutory period, followed by possession, created the bar which is available to prevent a redemption. It effectually determined the tenancy in common. The relation of mortgagor and mortgagee is the same, in many respects, as that of tenants in common. In either, hostile acts must be done adverse in their nature, or they will be referred to the relation that had previously existed. But in each, one party may so act as to show that he regards the relation ended, and thenceforward his acts will be regarded as independent of and adverse to the relation.

It is urged that there was not payment of taxes for seven years after possession was taken of the property, under and in subordination to the title claimed by Samuel L. Hinkley, or his grantees. We understand the record as proving that fact; but, even if our inferences in this respect are erroneous, still there can be no question that the taxes were paid on the property for the requisite period under the deed, while the

234                HINKLEY *et al. v.* GREENE.                [Sept. T.,

Additional opinion of the Court.

land was vacant and unoccupied, which was followed by possession before this suit was brought; and in *McCagg* v. *Heacock*, *supra*, this was held to create a bar, and that case only followed numerous former decisions.

As we said before, Moore, or those claiming under him, have never paid or offered to pay Samuel L. Hinkley for the money he advanced to Ogden, or the money he paid to Samuel Hinkley when he purchased of him, which is claimed only amounted to a redemption of the mortgage given to Ogden. Samuel L. paid this money to Samuel Hinkley in November, 1839, and if it were conceded that it was advanced for the benefit of both tenants in common, it should have been repaid to Samuel L. in a reasonable time. And no one can say nineteen years would be such a time. This we regard as gross *laches*. Moore and his assignees seem to have stood by and done nothing, not even to have paid taxes during all of that time. It would be unjust now to permit him or them to come in after such a lapse of time and reap all the benefits of Samuel L. Hinkley's superior diligence, and not even offer to restore to him the money paid for Moore when they purchased of Ogden. Counsel mistake the scope of the decision when they suppose that *laches* is imputed to Greene, or those claiming under him, in proceeding to enforce his mortgage on Moore's interest. The *laches* consists in the failure of Moore or his assigns to refund to Samuel L. Hinkley the money he advanced to Ogden to pay for Moore's interest in the land, and the sum he paid Samuel Hinkley when he received the deed for the property. When we find Moore and his assigns have delayed such a length of time, we must conclude they abandoned all claim to the property, and regarded Samuel L. Hinkley as the owner. Moore's grantees or mortgagees can not, under the circumstances disclosed in this record, occupy any better position than he could, had he never made the mortgage to Greene, or parted with his title. On either of the grounds presented, we are

Syllabus.    Opinion of the Court.

satisfied the case was properly decided at the last term of this court, and that the decree then rendered should not be disturbed. The rehearing must be refused.

*Rehearing refused.*