(No. 14245.—Reversed and remanded.)
JOHN SIEGLE *et al.* Plaintiffs in Error, *vs.* JOHN CRISS *et al.*
Defendants in Error.

*Opinion filed October 21, 1922.*

1. EJECTMENT—*cultivation is sufficient evidence of possession.*
Cultivation of land from year to year is sufficient evidence of actual possession, and enclosure by fence is not required.

2. SAME—*when possession is co-extensive with description in deed.* Possession by a grantee is co-extensive with the description in his deed, but where a deed conveys timbered and uncultivated land, the possession of the grantees is not, in law, an actual possession as to any part of the land cultivated by a third party.

3. SAME—*plaintiff may recover any portion to which he is entitled.* Under section 12 of the Ejectment act the plaintiff may recover whatever part, share or interest in the disputed land he is shown to be entitled to on the trial.

4. SAME—*when plaintiffs must show title from the government.*
Plaintiffs in ejectment must prove a connected title from the government to themselves where their *prima facie* case of title to the disputed strip is rebutted by evidence of actual cultivation of a portion of the land by the defendants' predecessors in title and where there is no proof of actual possession or cultivation by the plaintiffs' grantors.

5. SAME—*adverse possession under twenty-year statute must be actual possession or occupancy.* Where defendants in ejectment have had no color of title to the disputed strip of land but rely upon adverse possession under the twenty-year statute, the proof of such adverse possession must consist of facts tending to show actual possession or occupancy of the land.

6. SAME—*when demand for possession is not required.* A notice to quit or demand for possession is not required to maintain ejectment where there is a want of privity between the parties to the suit with respect to the premises sought to be recovered, where the parties, respectively, claim under independent hostile titles, or where the entry by the defendant was wrongful in its inception or has become so afterwards.

7. SAME—*when plaintiff is not required to prove demand under Ejectment act.* Under section 22 of the Ejectment act the plaintiff is not required to prove a demand for possession of the prem-

ises unless the defendant, by special plea verified by affidavit, shall deny that such demand was made, but the statute is not to be construed as requiring a demand to be proved merely because such special plea is filed, provided no demand was necessary.

WRIT OF ERROR to the Circuit Court of Pike county; the Hon. HARRY HIGBEE, Judge, presiding.

WILLIAMS & WILLIAMS, and WILLIAM & BARRY MUMFORD, for plaintiffs in error.

CAPPS & WEAVER, and EDWIN JOHNSTON, for defendants in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiffs in error, John Siegle and E. J. Strauss, began on October 25, 1919, in the Pike county circuit court, an action of ejectment to recover from defendants in error, John Criss and E. W. Fausek, the possession of about 26.6 acres of land described in the declaration in the ordinary form as a strip of land about 4.38¼ chains wide at the north end and about 8.76½ chains wide at the south end, off the east side of the southeast quarter of section 36, in township 7, south, range 5, west of the fourth principal meridian, in Pike county, or all that part of the southeast quarter in the possession of the defendants and east of the fence now maintained by them across the quarter section. Defendants in error filed a plea of the general issue and three verified special pleas. The first special plea is to the effect that Criss has been in the adverse possession of the premises, claiming to own the same, for a period of more than twenty years before the suit was begun. The second is that Criss is the owner in fee simple of the premises and that Fausek is his tenant, and that they are not guilty as charged. The third special plea denies that plaintiffs made demand on defendants for possession before the suit was

begun. On a trial by jury the verdict was not guilty, and the court rendered judgment on the verdict in favor of the defendants and against the plaintiffs. This writ of error is prosecuted to review that judgment.

The parties will hereafter be referred to as plaintiffs and defendants, as in the court below.

Township 7, south, range 5, west, in Pike county, is known as Ross township, and east and adjoining that township is township 7, south, range 4, west of the fourth principal meridian, known as Pleasant Hill township, also in Pike county. The south line of these townships is the line between Pike and Calhoun counties. Plaintiffs have the record title to the southeast quarter of section 36, in township 7, range 5, and that is conceded by defendants. The natural stream Sny E'Carte, referred to in the record as the Sny, enters the southwest quarter of section 31, township 7, range 4, at the northwest corner and flows thence southeasterly across that quarter section. Defendant Criss is conceded to be the owner of the record title to all that part of the southwest quarter of section 31, township 7, range 4, lying south and west of the Sny, and containing, according to the government survey, 46.97 acres. The line running between plaintiffs' land and Criss' land is a township line.

To prove title to their land plaintiffs introduced a quit-claim deed from Alexander W. Bothwell to James S. Irwin dated December 24, 1874, purporting to convey the west half of the southeast quarter of section 36, township 7, range 5; also a quit-claim deed from Hezekiah S. Bundy to Irwin dated January 15, 1875, purporting to convey the east half of said southeast quarter; and a quit-claim deed from Irwin and wife to Melissa Gruell dated December 8, 1879, purporting to convey all of said southeast quarter. Plaintiffs have a connected chain of title from Calvin Gruell and Melissa Gruell, his wife, as shown by other deeds introduced in evidence by them, the deed from the Gruells being dated April 12, 1907. They also proved the payment of

taxes and drainage assessments on the land from 1906 to 1918, including both of said years, by the Gruells and their subsequent grantees. The other evidence for the plaintiffs shows that Calvin Gruell, known as Captain Gruell, had charge of the land of Melissa Gruell aforesaid and built a house near the southwest corner of the southeast quarter of section 36, and cleared for cultivation and occupied through tenants land on the tract in 1893, and continued to occupy and clear land on said tract for cultivation up to the time the Gruells conveyed the same, in 1907, and that the subsequent grantees of the Gruells, including plaintiffs, continued to occupy and clear land for cultivation up to the time this suit was brought. The evidence tends to show that 135 or more acres were cleared on the southeast quarter, known as the Gruell land, at the time this suit was brought, and that these clearings began at the house built by the Gruells in 1893, near the southwest corner of the tract, and were extended north and east of the house until they had almost reached the disputed strip when this suit was brought. If the east section line of section 36, which is a township line, runs due north and south the disputed tract is a part of the southeast quarter of section 36, bounded by the section and county line on the south, on the east by the section and township line, by the quarter section line on the north, and by an angling line on the west, beginning about 275.9 feet west of the northeast corner of the section and running southwesterly to a point about 651 feet west of the southeast corner, enclosing a tract of about 28 acres. The record does not disclose that the Gruells, or any subsequent grantee of the southeast quarter, known as the Gruell land, had any actual occupancy or possession of any part of the disputed strip except a very small part thereof and for temporary use, as later explained.

The tract of land known in the record as the Criss land, and to which Criss is conceded to have the record title, is a triangular piece of land bounded on the north and east by

the Sny, on the south by the section and county line, and on the west by the section and township line. As shown by the evidence, Criss obtained his record title by virtue of a bond for deed executed by one Chamberlain on May 13, 1905, and a deed by Chamberlain and wife pursuant to the provisions of the bond, in which the land is described as all that part of the southwest quarter of section 31, township 7, range 4, containing 47 acres more or less. Criss has been in possession of portions of this fractional quarter under claim of ownership since about the date of his bond for deed, occupying it by tenants, except about two years, 1913 and 1914, when he lived on it. Since his occupancy in 1905 he has continued to clear the land from year to year, and in about 1910 he had the present fence built that encloses the disputed strip, according to his testimony. The entire strip, or about all of it, is now cleared and is being cultivated by him. The fractional southwest quarter was formerly owned by Criss' father-in-law, Whiteside, who purchased it in 1887 and lived in a house built on it about the same year, until he died, in 1897. Criss testified that the widow of Whiteside "had control and possession" of the fractional quarter of section 31 from the death of Whiteside until Chamberlain purchased it for him at a master in chancery's sale in 1905 and executed the bond for a deed.

The following contentions are made by the defendants: (1) That the evidence does not show that the township line is on the east side of the disputed strip and that the strip is a part of the Gruell quarter section; (2) that Criss and his predecessors in title have been in adverse possession of the disputed tract more than twenty years prior to the beginning of this suit, claiming it as owners; (3) that the owners of the Gruell land and the Criss land in 1892 had the line between the tracts surveyed, and agreed that the line surveyed (the line on which Criss' fence now stands) should be the boundary line between their land; (4) that the line so surveyed has been acquiesced in by the respective own-

ers and recognized as the dividing line between them for more than twenty years before the suit was begun; (5) that plaintiffs have not at any time shown possession of the disputed tract, have not connected themselves with any prior grantor who had possession of it, and have not shown a connected chain of title from the government to themselves; and (6) that plaintiffs have not proved that they made demand for possession before suit was begun. The claim is that if the evidence sustains any one of the above contentions the court properly overruled the motion for re-trial and in arrest of judgment and that the judgment should be affirmed.

The evidence does show that the disputed strip is a part of the Gruell quarter section, and that the township line between plaintiffs' land and defendants' land as located by the government surveyor is about 627.66 feet east of Criss' fence at the south end and about 275.9 feet at the north end. This is clearly shown by the testimony and surveys of Gilbert Lyons, an engineer and surveyor of Pike county, and John A. Early, an engineer and surveyor of Calhoun county, both of whom made separate surveys in 1920 for the purpose of locating the township line and its distance from Criss' fence. Lyons' survey showed the township line to be 651 feet east of the south end of the fence, while Early's survey showed the distance to be 627.67 feet. Early did not state the distance at the north end of the strip. That Early's survey located the township line about as the government surveyor had located it is shown by his testimony that he began his survey at the southeast corner of section 31 and located a government corner on the Sny as he proceeded westward, which was marked by a standing Sycamore tree and an elm stump. His measurement from the southeast corner of the section to this government corner was ten or fifteen links longer than the government measurement,—a distance less than ten feet. His testimony further shows that he found the government corner on the

range line a half mile south of the point that he located as the southeast corner of the Gruell land, and that he proceeded about two miles north into Pike county, where he found two stones that were due north of the government corner he located in Calhoun county and the point located by him as the southeast corner of the Gruell quarter. His testimony is to the effect that the original government field notes and plat called for a straight meridian line at the four township corners, the southwest corner of section 31, the southeast corner of section 36, the northwest corner of section 6 and the northeast corner of section 1, the latter being sections directly south of Pleasant Hill and Ross townships. The testimony of both surveyors is to the effect that they located a due north and south line, and that all township lines located by government surveyors are meridian lines, running north and south, and we know this is true from the history of government surveys. That Criss' fence is not on the township line is further evident from the fact that it runs in a northeasterly and southwesterly direction and varies considerably from a due north and south line, and his fences and the Sny enclose 65 or more acres of land while the original government survey gives him a fraction less than 47 acres. His testimony shows that he has as much as 65 acres in the enclosure, and the other evidence shows that he has more than 65 acres. The survey is further corroborated as being approximately correct by the survey of J. W. Hardy, a Pike county surveyor, made in April, 1918.

Criss bases his claim that his fence line is the township line on the survey made by W. Pulliam, county surveyor of Calhoun county, and J. W. Bowen, county surveyor of Pike county. These two surveyors were employed by one Stark, who owned the northwest quarter of section 6 in Calhoun county, just south of the Criss land. They erroneously located the southwest corner of the Gruell land on the county line about the same distance west of the true southwest

corner as Criss' fence is west of the true corner at the
southeast corner of the Gruell land. After mis-locating the
southwest corner of the Gruell land the Calhoun county sur-
veyor proceeded to run out Gruell's quarter section and gave
him exactly 160 acres, because Gruell said that his wife's
deed called for just 160 acres. This survey was made in
November, 1892, and the plat made by these surveyors
shows clearly that the east line of Gruell's land is not a
north and south line and is entirely out of line with the
township line from Gruell's northeast corner northward,
and that the west line of Gruell's land runs in the same
direction, while the government survey shows that both of
Gruell's north and south lines run due north and south.
These words were written by Bowen, the Pike county sur-
veyor, under that plat: "I am not satisfied that it [the sur-
vey] is correct, but Mr. C. Gruell said his deed called for
160 acres, consequently the work was done as shown."
The testimony of all other surveyors and the records of the
government surveys and of Hardy's survey show that the
Bowen and Pulliam survey was not a correct survey of the
Gruell land and was a mistake of those surveyors.

The evidence discloses, as already shown, that the Gru-
ells were not in actual possession of any part of their quar-
ter section when the Bowen and Pulliam survey was made,
in November, 1892. Their land was all heavily timbered
bottom land at that time, which they did not begin to clear
until in 1893. The evidence further shows that in Novem-
ber, 1892, Whiteside was in possession of the Criss land as
owner and had been since about 1887. His house was lo-
cated about a quarter of a mile east of the southeast cor-
ner of the Gruell land as located by Bowen and Pulliam, at
which corner was located a rock about three feet long and
seven or eight inches square at the top and standing about
six inches above the surface of the ground. The record is
not very clear as to whether or not this rock was located
by Bowen and Pulliam or whether it was found by them

there when they made their survey. The testimony of Criss does show that Whiteside in November, 1892, had a clearing on the south side of Dunbar slough, extending from his house westward to the rock marking said corner, containing about six acres. The south side of the Criss land was at that time fenced by a rail fence that had been there for several years and has continued there from that time up to the beginning of this suit. The clearing south of the Dunbar slough in 1892 was fenced on the west, north and east sides by a fence running northerly from said rock across the slough, which is about 100 feet wide. After the fence crossed the slough it extended thence easterly on the north side of the slough to a point north of the house and thence ran south, connecting with the fence on the south. In this enclosure, including the slough, there were about 12 acres. The cleared land south of the slough was very narrow at the point where it reached the fence on the west, it being not more, perhaps, than 12 feet wide there, but it gradually widened going easterly towards the house. There was also at this time a clearing just north of the slough of about seven acres that extended westward about as far as the fence then located there. The evidence tends to show that Whiteside and his subsequent grantees had possession of these two cleared tracts from 1892 until this suit was brought. Just how many acres of these two tracts were on and of the disputed strip does not definitely appear. The fencing around these clearings was not of a permanent character on the west and north, and the evidence tends to show that the west line of the fencing ran more to the east from the rock than does Criss' present fence. The evidence tends to show, also, that the fences were not intended to run on any particular line but were attached to trees or anything in convenient reach that would serve the purpose, and that they were intended at first as a temporary corral for hogs or cattle, and later to contain stock pastured on the stalk fields. The two tracts of cleared land have been cultivated

by Whiteside and his successors ever since 1892. When land is cultivated from year to year this is sufficient evidence of actual possession without regard to the question of enclosure by fence. There is also some evidence to the effect that in the north end, near the northwest corner of the disputed strip, there were from three to five acres enclosed by a fence that ran along the southwest side of the Sny and thence southwesterly around a pond and back again to the Sny. This enclosure was temporary, for a hog corral or pen, and was placed there somewhere between 1892 and 1897. It was not there after 1905, and the evidence does not show any cultivation of that enclosure. In about 1900 one of Gruell's tenants built a temporary barbed wire fence, starting from the rock north and continuing about half-way across the quarter. It was only there for about two years and was temporary, for the purpose of corraling cattle. All of the fences up to this time were temporary and followed no particular line or direction, and were not intended to follow any particular line surveyed or otherwise, and all of them were east of the present fence built by Criss. Those of them that started from the rock had the same starting point with Criss' fence, but they bore off more easterly after leaving the rock.

There is no evidence in the record showing that Criss' fence follows the line surveyed by Bowen and Pulliam. The evidence does tend to show that up to the bringing of this suit Whiteside's possession was not questioned by anybody, and the same is true as to all subsequent possessors of any part of the disputed tract. All the rest of the disputed tract, except that cleared as aforesaid, was in heavy timber and brush until Criss took possession and cleared it. There is no other evidence of possession of the disputed strip by Whiteside or any subsequent grantee of the Criss land except mere declarations of witnesses to the effect that Whiteside and his grantees had control and possession, without detailing any facts tending to prove possession.

The Gruells took actual possession of the Gruell quarter in 1893 under the deeds made to Gruell's wife. Their possession was co-extensive with the description in the deeds, but is not to be treated in law as an actual possession of any part of the tract described in the deeds which was in the actual possession of another. (*Burns* v. *Curran,* 275 Ill. 448; *Johns* v. *McKibben,* 156 id. 71.) The evidence, therefore, tends to show that the Gruells had possession of all the disputed strip from 1893 to 1907 that was not in actual cultivation, and that the right to this possession was transmitted to and continued in their grantees. Under section 12 of the Ejectment act the plaintiff in ejectment may recover whatever part, share or interest he is entitled to, as shown upon the trial. (*Almond* v. *Bonnell,* 76 Ill. 536; *Whitham* v. *Ellsworth,* 259 id. 243.) It was, to say the least, a question of fact on this record whether or not Criss established title by adverse possession to any part of the disputed tract, and the evidence was rather against him as to the establishment of any such right as to the timbered portion of the tract cleared by him. The instructions to the jury should therefore have been accurate and not misleading.

There is absolutely no evidence in the record tending to show an agreement between any two holders of the two quarter sections aforesaid as to a dividing line. The only evidence bearing upon the question of an agreed line is the fact that Gruell had his wife's land surveyed in 1892 in the manner already related. Whiteside was not even present when it was surveyed. There is no evidence in the record that Whiteside and Gruell ever talked about the survey or the dividing line or an agreed line, and there is no evidence that any subsequent holders of the land made any agreement or discussed the survey or the dividing line until just before the suit was brought. The court should therefore not have instructed the jury that if in 1892 the then owners of the land in controversy and that adjoining had the same surveyed and divided and agreed that the line then

established and marked should be the dividing line between them, such establishment of a division line would be binding upon them and upon all persons who afterward acquired the same, whether or not such line was the true meridian line as found by the government surveyor or any other surveyor. It is also true that there is little, if any, evidence tending to show that the line surveyed has been acquiesced in by the respective owners and recognized as the dividing line between them for more than twenty years before the suit was begun. The most that can be said is that there is some evidence tending to show that by their conduct the parties recognized the stone at the southeast corner in the Bowen and Pulliam survey as the government corner for the two quarter sections. There is absolutely no proof as to any agreement that it was the corner or as to acquiescence further than we have already recited. No one attempted to say that Criss' fence was on the survey line after it left that stone, and the evidence rather tends to show that Criss built his fence there without knowing just where the line was.

As to the fifth ground of contention of defendants, it is true that plaintiffs have not shown at any time actual possession of the parts of the disputed tract that were cleared and cultivated by Whiteside and have not connected themselves with any prior grantor shown to have possession thereof and have not shown title from the government to themselves. Their *prima facie* case was rebutted, in part, by proof of possession by Whiteside of parts of the strip. It was therefore necessary that plaintiffs, as to such parts of the disputed tract, should show connected title from the government to themselves. (*Krause* v. *Nolte,* 217 Ill. 298; *Hellman* v. *Roe,* 275 id. 158.) When that connected chain of title is in evidence the question will then be, Have the defendants proved adverse possession for twenty years or more of all or any part of the disputed tract? If so, they will defeat plaintiffs' action as to all that part of the tract to which they prove adverse possession. Such adverse pos-

session must be an actual possession or actual occupancy
of the land, as the defendants had no color of title to the
strip, and the proof should consist of facts tending to show
such actual possession or occupancy. *Fisher* v. *Bennehoff,*
121 Ill. 426.

It is true, as contended by defendants, that plaintiffs did
not show that they made demand for possession before suit
was begun. The instrument which was put in evidence by
plaintiffs and which they claim was a demand for possession
was not a demand for possession at all, and this is so clear
that we do not deem it necessary to further refer to it. But
plaintiffs' claim that it was not necessary for them to make
demand is sustained by the record. The rule is that a notice
to quit or demand for possession is never required where
there is a want of privity between the parties to the suit
with respect to the premises sought to be recovered. Where
parties, respectively, claim under independent, hostile titles,
the law of notice to quit or demand for possession has no
application. (*Harland* v. *Eastman,* 119 Ill. 22; *Mapes* v.
*Vandalia Railroad Co.* 238 id. 142; *Gregg* v. *VonPhul,* 68
U. S. 274.) By section 22 of the Ejectment act it is pro-
vided that it shall not be necessary for plaintiff to prove
a demand for possession of the premises unless defendant
shall deny that such demand was made, by special plea veri-
fied by affidavit. That section is not to be construed as
requiring a demand for possession to be proved by plaintiff
in every ejectment suit, even where the special plea is filed.
Where the entry was wrongful in its inception, as claimed
by plaintiffs in this case, or has become so afterwards, no
demand is necessary before ejectment may be maintained.
(*Holston* v. *Needles,* 115 Ill. 461.) Defendants have cited
on this question only the *Holston case,* which is against their
contention. Defendants' given instruction telling the jury,
in substance, that unless plaintiffs made a demand for pos-
session, which was refused, the jury should find for defend-
ants, is erroneous and the giving of it was reversible error.

We do not deem it necessary to further discuss the various other complaints of plaintiffs as to the court's action in refusing or giving instructions. The law of ejectment is so simple on the facts of this case and on the other points raised as to not require further discussion.

For the giving to the jury of the two erroneous instructions aforesaid, the judgment of the circuit court is reversed and the cause is remanded.  *Reversed and remanded.*