(No. 24362. )

ETTA W. FOOTE *vs.* THE CITY OF CHICAGO.—(RALPH A. FOOTE *et al.* Appellants, *vs.* THE CITY OF CHICAGO *et al.* Appellees.)

*Opinion filed February 16, 1938—Rehearing denied April 6, 1938.*

CHARLES E. CARPENTER, and H. A. BARNHARDT, for appellants.

RICHARD S. FOLSOM, FRANK S. RIGHEIMER, EDWARD R. JOHNSTON, and ALBERT E. JENNER, JR., for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

On December 27, 1922, Etta W. Foote, now deceased, filed a bill in the superior court of Cook county against the city of Chicago and the board of education of that city, seeking partition of forty acres of land lying on the northwest side of Chicago, in which she claimed an undivided one-half interest in fee. Following her death during the pendency of the suit, her sons, Ralph A. and Andrew J. Foote, were substituted as her only heirs-at-law. They prosecuted the suit, evidence was heard before the master and on his report the chancellor dismissed their bill for want of equity. From that decree they have appealed.

Etta W. Foote, and later, appellants, by their amended bill, based their claim on the will of John C. White, deceased, a brother of Etta W. Foote, and upon a conveyance from the heirs of one William Ewing. Their bill sets out, in detail, their claim of title on what they allege to be an unbroken chain from the United States Government. They allege that appellee, the city of Chicago for the use of the schools, owns a one-half interest in this forty acres and that Rosa and Anna Hitt also claim an interest in the remaining undivided one-half. Arza Hustead Hitt, grantee by quitclaim deed of Rosa and Anna Hitt, filed a cross-com-

plaint in the superior court but did not appeal from the decree.

Appellees answered the amended bill denying the allegations of the appellants and asserted a fee simple title to the entire tract of forty acres, in trust for the use of schools, by virtue of mesne conveyances from the United States Government, also by virtue of adverse possession for the statutory period of twenty years under section . 1 of the Statute of Limitations, and more than seven years under color of title, as provided in section 4 of that act.

The facts of this case, so far as they affect the chain of title, are in many respects the same as those in *City of Chicago* v. *Hitt*, 334 Ill. 619, and it is unnecessary to again set them out in detail here. The similarity between the facts of the *Hitt case* and the one before us lies in the fact that one Charles Pettit who took the forty acres here involved by warranty deed from Edward McConnell, holder of the receipt and certificate of entry from the United States Government, though McConnell did not then have the land patent, is the same Charles Pettit who also took the eighty-acre tract involved in the *Hitt case* by deed from one John L. Wilson, holder of the receipt and certificate of entry of the United States Government by assignment from one Isaac K. Palmer. Pettit mortgaged and disposed of both tracts by the same instruments. There is this difference, however, in the origin of title as to the two tracts. McConnell, after his deed to Pettit, received the patent to the forty acres and made no attempt to further dispose of the title, while, as to the eighty acres involved in the *Hitt case,* Palmer, who took the certificate of entry or receipt in his own name and assigned it to Wilson, also received the patent because the certificate and assignment thereof were not delivered to the commissioner of the general land office but were lost or destroyed. Palmer issued his deed for the land to another grantee and thus started a chain of title. In the meantime Wilson, though not hav-

ing the patent, had also started another chain by executing a deed to Charles Pettit. The importance of the difference in these chains of title affecting the two tracts lies in the fact that, while in the *Hitt case* the agent, Palmer, at no time assigned his patent to Wilson but deeded the property elsewhere, in the case before us McConnell, who took the entry receipt and certificate in his own name and later received the patent, deeded the forty acres to Pettit previous to the receipt of the patent. It is not denied that the patent, when received, enured to the benefit of McConnell's successors in title, by reason of the warranty in his deed to Pettit.

As set out in the facts in the opinion in the *Hitt case,* Pettit executed a certain mortgage for $1500 to one Richard J. Hamilton, as school commissioner. This mortgage not only covered the eighty acres which Pettit had taken by deed from Wilson, but also the forty acres conveyed by Edward McConnell, the patentee, to Pettit. As this mortgage was not paid, Hamilton foreclosed the same by *scire facias* proceedings instituted October 31, 1837. A sheriff's sale was had under this foreclosure on February 27, 1844, and the land was purchased by William H. Brown, school agent, who received a deed thereto on December 11, 1846, and recorded the same on February 16, 1853. Brown, on February 12, 1853, deeded the lands to the city of Chicago for the use of schools. That deed was recorded February 15, 1853. Before the foreclosure sale Pettit had conveyed his interest in the property, subject to the mortgage, to one Henry Moore, and appellants claim their title through various mesne conveyances from him. Moore conveyed, by quitclaim deed, to one Isaac R. Hitt, who, in 1876, by quitclaim deed conveyed to one Merrill Ladd, who quitclaimed to Obadiah Huse, who, in turn, deeded to John C. White, who quitclaimed an undivided one-half to one James R. Stanley and the other to William G. Ewing, in trust, later devising that one-half to the original plaintiff in this cause,

Etta W. Foote. After Hitt's quitclaim deed to Ladd, Hitt's interest in the premises was sold at bankrupt's sale and by mesne conveyances that interest, whatever it amounted to, was conveyed to the city of Chicago for the use of schools.

Three questions are presented in this case: (1) Whether the appellees have had adverse possession of the forty acres here involved for the statutory period of twenty years; (2) whether they have had possession for seven years under color of title, and (3) whether their title, running back to the Government, constitutes a good title. All of these points are disputed by appellants. They say, first, that the appellees are co-tenants with appellants and their possession has not been such as to defeat appellants' claim, and that appellees' record title is not good.

It was held in the *Hitt case* that as Pettit did not have the legal title to the eighty acres, not having the patent, *scire facias* was not effective to foreclose his mortgage to Hamilton so as to give the legal title to a purchaser at the foreclosure sale. The question of adverse possession was not in the *Hitt case*. The facts showed that the defendants and not the city were, and at all times had been, in possession of the land. It is not claimed, therefore, that that case is decisive of the rights of the parties here. The property is not the same, and as we have seen, the facts concerning the method by which Charles Pettit acquired the two properties are not identical.

We will consider first the appellees' defense of adverse possession for the statutory period of twenty years under section 1 of the Statute of Limitations. This act provides that "no person shall commence an action for the recovery of lands, nor make an entry thereon, unless within twenty years after the right to bring such action or to make such entry first accrued, or within twenty years after he or those from, by, or under whom he claims, have been seized or possessed of the premises, except as hereinafter provided." The evidence concerning adverse possession is un-

disputed, as appellants offered no evidence on that issue, nor was any attempt made to contradict or impeach appellees' evidence of possession. It is not contended on behalf of appellants that appellants, or any of their predecessors, were ever in possession of the premises or any part of them. It is, however, argued that the facts do not show such adverse possession as could ripen into prescriptive title under the Statute of Limitations.

The master and chancellor found, and the evidence of appellees is, that on April 10, 1879, the board of education, under the power expressly given by the statute, (Ill. Rev. Stat. 1937, chap. 122, sec. 156,) leased the entire tract to one Laechele for a term of five years from February 8, 1879, to February 8, 1884, at an annual rental of $100. Laechele had been in possession of a small portion of it for some years before this lease. This lease was renewed on December 10, 1883, for a period of five years at an annual rental of $200. At the end of the second period another renewal was made for a period of three years at an annual rental of $250. This lease, when it expired in 1891, was not renewed. Witnesses, some of whom were old enough to have personal recollection of the facts, testified to the character of the Laechele tenancy. As shown by their testimony, and other evidence in the record, Laechele entered the premises with his family as early as 1875. He built a small house with outbuildings. After leasing the property, he erected some fences on different parts of the premises for pastures, cultivated part of the land as a truck garden, used portions as pasture, and cut hay from the balance. During the latter part of his occupancy he had one-half the tract under cultivation and used the remaining one-half for pasture land and for cutting hay. On the expiration of Laechele's lease in 1891, the board of education leased the entire tract to one Peter Schafer who went into possession, plowed up the entire tract and divided it into 5-acre plots which he leased to certain subtenants for truck

gardens. Schafer's tenancy continued until January 1, 1905, during all of which period he divided the entire tract into 5-acre plots and re-let to subtenants. Several small houses were erected on various of the subdivided lots. In the summer of 1901 the appellee board of education, erected a small school building on the premises. On the expiration of Schafer's tenancy the entire tract, except that occupied by the school building, was leased to one Louis Hoffman for a five-year period, who continued to subdivide the tract and sublet it. Shortly before his lease expired, the board of education, on August 22, 1910, leased the entire premises to the city of Chicago for park purposes, the lease to begin on the expiration of Hoffman's lease on January 1, 1911. This lease was continued from time to time and the ground was so used at the time of the filing of this suit. With the exception of two years no taxes were extended against the property and the record shows that none of the taxes extended were paid but the property was marked exempt, or tax collection denied. In September, 1912, a portion of the tract was dedicated to the public for street purposes.

To this evidence appellants say that appellees were at all times merely co-tenants of appellants and the possession of appellees was not inconsistent with appellants' title. The record is barren of any proof tending to establish a co-tenancy. While it shows that appellants' claim of title is to an undivided one-half received through their mother, who was beneficiary under the will of John C. White, there is no evidence in the record that the appellees in any way took an undivided interest in this property. According to appellants' chain of title the other undivided one-half came by mesne conveyances from White to Arza Hustead Hitt, who filed a cross-bill in this case but has not appealed from the decree. All of the deeds to appellees have been for the entire property. All sources of title relied upon by them relate to the whole fee and not to an undivided one-half.

The sheriff's deed in 1846, by which the appellees entered the chain of title, purported to convey the entire tract.

Appellants also say that they, as the co-tenants, were entitled to actual notice of appellees' claim and that acts of hostility to their title should have taken place before appellees' possession could cause a beginning of the running of the statute. The mortgage which the school commissioner held was foreclosed in 1837. The deed to the purchaser at the foreclosure sale, who transferred the property to appellees, was recorded in 1853. It purported to pass the entire title and was the instrument under which the appellees entered into possession and claimed title. It was the only instrument under which appellees could have entered into possession of this property. (*Mason* v. *Ayers,* 73 Ill. 121; *Rawson* v. *Fox,* 65 id. 200.) The evidence shows continuous payment of rent to appellees from 1879 for a period of over forty years. It is clear that the possession of appellees was actual, visible, notorious, exclusive and continuous and was under a claim of ownership and color of title. The possession of the tenants of appellee board of education was possession of the board itself. (*Martin* v. *Judd,* 81 Ill. 488.) Not only does the foreclosure of the Pettit mortgage by *scire facias* constitute notice of claims arising thereunder, but, whether a valid foreclosure or not, it showed that the mortgagor was asserting a hostile title to the premises and that the title asserted by the purchaser at the foreclosure proceeding was not in recognition of an existing mortgage, as appellants seem to contend, but on the ground that the mortgage had been extinguished by the foreclosure proceeding. This is true notwithstanding Pettit had, prior to the foreclosure, deeded the property to Moore subject to the mortgage. Whether the effect, in law, was to extinguish the mortgage is quite beside the point in considering the question whether appellees' possession was adverse in its inception and under claim of ownership and color of title.

It has been the rule since the early case of *Chickering* v. *Failes,* 26 Ill. 507, that after a foreclosure, or an effort to foreclose a mortgage, a presumption arises that all acts done in reference to the property by the mortgagee, or one holding under him, are done under a claim of ownership. As was said in that case: "If they [acts affecting the property] are such as is required by the statute, and for the period of time designated by the statute, they would form a bar to a redemption." It was also said in *Mason* v. *Ayers, supra:* "Where there is an attempt, unconnected with fraud, to foreclose, and a decree is rendered and a sale had, although the decree may be erroneous, or even void, still it shows an unmistakable intention to change the relation of the parties from mortgagee and mortgagor to that of claim of separate and independent rights; that the strict foreclosure or a deed under a foreclosure and sale, constitutes color, and that the relations of the parties, from that time forward, are hostile; that their fiduciary relation has thus terminated, and that they henceforth act as strangers in reference to the mortgaged property." To the same effect are *Reedy* v. *Camfield,* 159 Ill. 254, and *Lewis* v. *Pleasants,* 143 id. 271.

In order that the possession be adverse and inconsistent with appellants' claim it was not necessary that appellees establish and maintain the legal sufficiency of the *scire facias* proceeding. Whether the foreclosure was erroneous or void, a deed was issued, by an officer authorized to execute it, to the grantor of appellees, which purported to transfer the entire property and was sufficient to afford color of title under which to perfect prescriptive title. From this fact, together with the fact that the appellees' grantor at no time stood in the relation of mortgagee to this property, but only as a purchaser at a foreclosure sale, and deeded to appellees under claim of ownership, it is clear that their possession was adverse in its inception and under claim of ownership and color of title.

But appellants say they are co-tenants and they invoke the rule that to cause the running of the Statute of Limitations, as between co-tenants, there must be some act of disseizin, ouster or the like, which would give notice that an adverse claim is being asserted. That such is the rule is not disputed and cannot be. (*Thomas* v. *Chapin,* 274 Ill. 95.) We are unable, however, to adopt the view of appellants that they have established a co-tenancy with appellees in this property. In addition to what we have said, it may be further observed that the record contains nothing to indicate that at the time of the execution of the deeds which gave appellees color of title, there was any claim on behalf of anyone to an undivided one-half interest in the premises. Appellants' claim to an undivided one-half interest is based on the will of John C. White. White did not attempt to make a division of this property until 1881, a number of years after appellees went into possession of the entire premises.

The rule governing adverse possession against a co-tenant applies only where there has been a co-tenancy and subsequent thereto one of the co-tenants makes claim to the entire estate. It can have no application to a situation where, as here, parties claim to have acquired an undivided one-half interest subsequent to the acquisition of deeds upon which appellees claim full fee title, and subsequent to their possession of the entire premises. A claimant out of possession cannot sit by upon discovering possession in another and assume that the person in possession is holding and claiming merely the remaining interest and, as such, occupying as a co-tenant. He must investigate. (*Rawson* v. *Fox, supra.*) A further answer to appellants' claim in this regard will be seen in the fact that the record in this case clearly demonstrates that, even though a co-tenancy had at one time existed, the possession of appellees was for the statutory period, adverse to such supposed co-tenancy. The rule announced in *Hinkley* v. *Greene,* 52 Ill. 223, and

not since departed from, is that the purchase by one co-tenant of the interest of another co-tenant at a sale under foreclosure by *scire facias* is an act sufficiently adverse and hostile to constitute notice and ouster as to all other co-tenants and to the whole world. It was there said: "The purchase from Samuel Hinkley, and payment of taxes under that deed, manifested to Moore, [the co-tenant,] or those claiming under him, that Samuel L. Hinkley was claiming adversely and in hostility to them and the whole world. These acts, of themselves, were hostile, and amounted to an ouster. * * * It then follows that the purchase of what was supposed to be a paramount title under an irregular effort to foreclose Ogden's mortgage, and the payment of taxes thereunder, or such payment and possession, were acts of such hostility as amounted to an ouster of Moore or his assigns, and when continued for the statutory period, followed by possession, created the bar which is available to prevent a redemption. It effectually determined the tenancy in common."

It is not necessary that a prescriptive claimant show actual notice to other persons claiming title to the property. He is not concerned with what claims other people make to the property but only whether he is holding the whole premises adversely and under claim of ownership. Mere knowledge, on the part of an adverse holder of possession, of outstanding claims, is immaterial and imposes upon him no duty to give actual notice. *Reedy* v. *Camfield, supra; Rawson* v. *Fox, supra; McCagg* v. *Heacock,* 42 Ill. 153.

We are of the opinion that appellees' possession of this property under claim of ownership and color of title meets all the requirements of the Statute of Limitations and this, alone, is sufficient to defeat appellants' bill. This being true, it is unnecessary to consider the sufficiency of appellees' chain of title.

The decree of the chancellor is right, and is affirmed.

*Decree affirmed.*