STEVEN K. APPLEBEY *et al.*, Plaintiffs-Appellants, v. WILLARD
LENSCHOW, Defendant-Appellee.

Second District   No. 2—84—1152

Opinion filed May 5, 1986.—Rehearing denied July 18, 1986.

Richard W. Husted, of Dundee, for appellants.

George E. Krippner and Theodore G. Schuster, both of Casey, Kruppner & Callahan, of Geneva, and Warren E. Strom, of Strom, Schuster & McCarty, of Elgin, for appellee.

PRESIDING JUSTICE NASH delivered the opinion of the court:

Plaintiffs, Steven and Melode Applebey, appeal from a judgment entered upon a directed verdict in favor of defendant, Willard Lenschow, in plaintiffs' action, wherein they sought damages for trespass by defendant, and also appeal from the judgment entered upon the verdict of a jury on defendant's affirmative defense which found that he was owner of the disputed land by adverse possession. Plaintiffs contend defendant failed to properly plead and prove ownership of the disputed land by adverse possession and did not establish the boundaries of the disputed area. Plaintiffs also contend the trial court erred in its instructions to the jury, in rulings on evidence, and by quashing affidavits of jurors submitted in support of plaintiffs' post-trial motion.

The disputed property is a strip of land lying east of the boundary of the land conveyed to defendant by his grantor and is a part of the property conveyed to plaintiffs by their grantor. The eastern boundary of the disputed area is an old fence line and the area is two feet wide at its south end, six feet wide at its northern point and it is approximately 553 feet in length. The following illustration shows the

relative locations of defendant's property (tract A), plaintiffs' property (tract B) and the disputed area between them:

The evidence at trial disclosed that plaintiffs purchased tract B in 1983 from Charles and Mary Spencer intending to build a home on it and breed horses. At the time they took possession, plaintiffs obtained a survey, commenced clearing the property of weeds and debris, and erected a temporary pen in which they placed their stallion. In June 1983, plaintiffs sought to ascertain the west boundary line of their property in order to erect a fence as part of a paddock and requested a neighbor, Marsha Pfingsten, to talk to defendant regarding the location of the southwest property stake. Defendant told Mrs. Pfingsten that plaintiffs should install their fence on the old fence line. The next day, defendant met with plaintiff, Steven Applebey, and showed him remnants of an old fence. Plaintiff remarked that "it didn't look like a fence to him" and suggested that the boundary line was anywhere from 2 to 6 feet further to the west. Plaintiffs thereupon proceeded to erect fence posts along the west boundary line of the property conveyed to them rather than at the fence line indicated by defendant. The following day defendant removed the fence posts and, thereafter, plaintiffs brought this action in trespass against defendant in which he asserted the affirmative defense of adverse possession.

Defendant had acquired tract A from Burt and Mildred Struck by warranty deed dated January 18, 1968. It had originally been a part of the Struck family farm which had been acquired by Struck's grandmother in 1871. The farm was conveyed to Burt Struck in 1948, as

part owner, and then as full owner in 1944. Burt Struck testified that he had farmed tract A from 1924 to 1967; he was familiar with the fence along the east boundary of the farm and had maintained it himself until 1960 when he ceased using the property for grazing and began growing crops. He threw rocks from the cultivated fields into the fence line and cut weeds in that area. He recalled that several trees grew along the west side of the fence line and he had cultivated around them with his tractor and rig, but could get no closer than 2½ feet from the fence. Struck stated that with modern farm machinery it was not possible to cultivate any closer than 10 feet from the fence line.

Struck also testified that a few weeks before trial he had walked the fence line and found remnants of steel and wooden posts, as well as barbed wire, which he recalled having nailed to the east side of certain trees years ago. Struck and the defendant both testified that when defendant took title to the property, they considered that it extended to the fence line. Defendant testified that when he bought the property he walked the east boundary and saw the fence at that place.

When defendant acquired tract A in 1968 he leased it to his brother, Glenn, who grew corn for three years. During that time, Glenn considered the fence to be the east boundary of the property; he plowed as close to the fence as his equipment allowed and sprayed weeds along the fence line. From 1971 to the date of trial, Donald Rowlett leased the tract and grew row crops. Rowlett testified that there were several trees and an old fence along the east boundary. His practice was to plow within 3 to 4 feet of a fence post if there were no obstructions. He trimmed trees along the fence line, threw field rocks there, and sprayed weeds.

A survey prepared by John Thornhill in 1967, entered into evidence as a joint exhibit of the parties, depicted a fence line east of the boundary line separating tracts A and B. A survey prepared by Alan Coulson for use in trial also showed the location of remnants of an old fence at that place. Other witnesses testified that along the first hundred feet of this line there was an existing fence which was once part of an old hog pen.

Plaintiff, Steven Applebey, testified that he placed the fence posts about 12 to 16 inches east of the boundary line. At that time, crops were growing on tract A and soybeans had grown there the previous year. The closest his fence posts approached to the crops was 1½ feet and in other areas were 4 to 5 feet away because the line of cultivation was not straight. Plaintiff, Melode Applebey, testified that she

walked the west boundary line of tract B in 1979, at which time the line of cultivation was no closer than 20 feet from it. She did not see a fence but saw some fence posts and a pen at the southwest corner.

Mary Spencer testified that she and her husband lived on tract B in 1980-82 and had cleared the property to the west boundary and parked junk cars there. She did not recall seeing any fence, fence posts or trees on the boundary line and testified that the disputed parcel was overgrown with weeds.

We consider first plaintiffs' argument that defendant's claim of adverse possession of the disputed land, asserted in his answer as an affirmative defense to plaintiffs' complaint in trespass, is a nullity as it failed to describe the land to which he claims ownership and, also, that defendant failed to establish the boundaries of the disputed parcel by the evidence.

In his response, defendant contends that the legal description of the disputed parcel was omitted, by inadvertence, from the description of his property as pleaded in his answer and affirmative defense. Defendant did therein describe tract A, which he acquired by purchase, but neglected to also describe the disputed strip of land along its eastern boundary to which he claims title by adverse possession. Defendant seeks leave to amend his answer in this court, pursuant to Supreme Court Rule 362 (87 Ill. 2d R. 362), and tenders the answer as amended to describe the disputed parcel. We have taken the motion with the case and now grant it.

■ Amendments conforming the pleadings to the proof in trial may be made on review if supported by the record and do not cause prejudice to the adverse party. (Supreme Court Rules 362 and 366(a)(1) (87 Ill. 2d Rules 362, 366(a)(1)); *Pickett v. First American Savings & Loan Association* (1980), 90 Ill. App. 3d 245, 250, 412 N.E.2d 1113; *Simonson v. Simonson* (1970), 128 Ill. App. 2d 39, 48, 262 N.E.2d 326, *appeal denied* (1970), 44 Ill. 2d 587.) The trial of this case was conducted by all parties on the basis that defendant claimed title by adverse possession to the disputed parcel of land in issue. Its dimensions and location were shown on joint exhibit 1 which was prepared by registered land surveyor, John Thornhill, who testified in trial. He described the disputed area as a strip of land 553.30 feet long, 2 feet wide at its southern point and 6 feet wide at its northern end. The west boundary of the parcel was shown to be the survey line separating tracts A and B and its east boundary at an old fence line. Other witnesses also testified as to the existence and location of the survey line and the old fence. In argument, plaintiffs' counsel noted defendant claimed ownership of the described area and it is apparent

there was no uncertainty in trial on the part of any party as to its location and dimensions.

As the offered amendment to defendant's answer and affirmative defense is supported by the proof and cannot prejudice plaintiffs, it will be allowed. For the reasons discussed, we also reject plaintiffs' assertion that defendant failed to establish the boundaries of the disputed tract by clear and convincing evidence, as was his burden as an adverse claimant. See *Joiner v. Janssen* (1981), 85 Ill. 2d 74, 83, 421 N.E.2d 170; *Martin v. My Farm, Inc.* (1983), 111 Ill. App. 3d 1097, 1103, 445 N.E.2d 44.

Plaintiffs next contend that defendant failed to establish adverse possession of the disputed parcel for the requisite 20-year period so as to bar assertion under section 13—101 of the Limitations Act (Ill. Rev. Stat. 1983, ch. 110, par. 13—101) of the legal title held by plaintiffs.

To sustain his claim of adverse possession, defendant must establish that his possession was, for the statutory limitation period, (1) hostile or adverse; (2) actual; (3) visible, notorious and exclusive; (4) continuous; and (5) under claim of ownership. (*Joiner v. Janssen* (1981), 85 Ill. 2d 74, 81, 421 N.E.2d 170; *Baumann v. Lawndale National Bank of Chicago* (1977), 45 Ill. App. 3d 328, 332, 359 N.E.2d 1086, *appeal denied* (1977), 66 Ill. 2d 625.) The limitation period commences to run when the true owner is disposed and, upon expiration of the period, the holder of land by adverse possession obtains the title which can only be divested by the conveyance of the land to another or by a subsequent disseisin for the statutory limitation period. *Davis v. Haines* (1932), 349 Ill. 622, 630, 182 N.E. 718; 3 Am. Jur. 2d *Adverse Possession* sec. 46 (1962).

The evidence at trial was that defendant's immediate predecessor in title, Burt Struck, farmed tract A and the disputed parcel from 1924 to 1967 when he conveyed tract A to defendant. Until 1960, Struck used the land for grazing and maintained the fence along what he construed to be the east boundary. After 1960, Struck grew crops and cultivated as close to the fence line as his equipment would permit. He threw rocks from the cultivated field into the disputed strip and cut weeds there. Struck testified that he considered the fence line to be the east boundary of his property; both Struck and defendant testified they considered that the conveyance to defendant included the disputed parcel of land to the fence line. It seems apparent that Struck adversely possessed the premises in issue for approximately 43 years.

After defendant acquired title to tract A in 1968, he occupied

it and the disputed parcel for approximately 16 years before the necessity arose to assert his interest therein by adverse possession in response to plaintiffs' trespass action. During defendant's occupancy, tract A was leased to tenants who farmed it and the disputed strip. The tenants considered the fence line to be the eastern boundary of the farm and cultivated as close to the fence line as their machinery permitted and sprayed the weeds in that area. Adverse possession may be established by a claimant through a tenant (*Foote v. City of Chicago* (1938), 368 Ill. 307, 314, 13 N.E.2d 965) and cultivation of land from year to year is evidence of adverse possession. (*Siegle v. Criss* (1922), 304 Ill. 338, 347, 136 N.E. 706; *Bugner v. Chicago Title & Trust Co.* (1917), 280 Ill. 620, 637, 117 N.E. 711).

Plaintiffs and defendants agree in their briefs that adverse possession by successive occupiers of land may be tacked together to establish a continuous possession for the statutory limitation period. (*O'Connell v. Chicago Park District* (1941), 376 Ill. 550, 559, 34 N.E.2d 836; *Mitchell v. Chicago, Burlington & Quincy Ry. Co.* (1914), 265 Ill. 300, 306-07, 106 N.E. 833.) Plaintiffs contend, however, that defendant failed to plead the theory of "tacking" in his affirmative defense and as defendant occupied the disputed land, at most, for only 17 years, he cannot meet the 20-year requirement of the statute.

Examination of defendant's answer and affirmative defense discloses that he alleged, *inter alia*, that "Defendant/Counter-Plaintiff by himself and his immediate grantor Burt H. Struck, have been in actual, exclusive and adverse possession of said real estate for a period of time in excess of 20 years." The legal description of the property referred to, however, was that of tract A only, and did not then include that of the disputed strip. Plaintiffs rely upon that oversight to now bar reliance by defendant on the tacking principle.

As earlier discussed, the trial was conducted by both parties on defendant's claim of adverse possession for 20 years so as to invoke application of section 13—101 of the Limitations Act (Ill. Rev. Stat. 1983, ch. 110, par. 13—101). We have allowed the amendment of defendant's affirmative defense for correction of the description error in order to conform the pleadings to the proof. Plaintiffs have not been taken by surprise or prejudiced and may not now be heard to argue that the theory of "tacking" is inapplicable to the case.

We conclude defendant has established compliance with each element necessary for adverse possession and that the verdict of the jury so finding was not against the manifest weight of the evidence.

Plaintiffs also contend that the jury was improperly instructed requiring reversal for a new trial. They argue first that

defendant's instruction No. 6A, which permitted the jury to consider adverse possession by both defendant and his grantor in determining whether the 20-year period of limitation statute had been met, misstated the law. Although plaintiffs initially objected to the giving of the instruction in the conference on instructions, they later withdrew their objection and thus did not preserve it for review. (*Lewis v. Hull House Association* (1975), 25 Ill. App. 3d 617, 621, 323 N.E.2d 600.) Even if not waived, the instruction was not erroneous as the theory of "tacking," earlier discussed, permits an adverse claimant to also rely upon the adverse possession of his predecessor in title. Plaintiffs also argue that defendant's instructions No. 10 and 11, which relate to the theory of tacking, were not supported by the pleadings or the evidence. A party is entitled to have the jury instructed on his theory of the case (*Lounsbury v. Yorro* (1984), 124 Ill. App. 3d 745, 751, 464 N.E.2d 866) if there is some evidence to support the theory set out in the instruction (*Khatib v. McDonald* (1980), 87 Ill. App. 3d 1087, 1095, 410 N.E.2d 266, *appeal denied* (1980), 81 Ill. 2d 602.) These instructions were properly given as we have determined defendant adequately pleaded the theory of tacking and there was evidence to support that theory in the case.

Plaintiffs also contend that defendant's given instructions No. 12, 12A and 13, which defined the elements of adverse possession, were not supported by the evidence. Instruction No. 12 refers to acts constituting possession and was properly given as there was evidence defendant's tenants and his predecessor in title used the disputed area for grazing of cattle and cultivation of crops, thus asserting ownership to the old fence line; they also maintained the fence and cut weeds in the area. Instructions No. 12A and 13 referred to the adverse possession elements of "open, notorious and exclusive" and "under claim of ownership." There was supporting evidence of the fence and farming activities sufficient to show that defendant and his predecessor in title to tract A claimed ownership of the disputed area and the instructions were thus properly given. Plaintiffs also assert that defendant's instruction No. 7 was erroneously given as it referred to adverse possession "as raised in Defendant's affirmative defense," where the disputed property initially was not described. The argument is without merit as we have allowed the amendment to the affirmative defense to conform the pleadings to the evidence.

■ Plaintiffs contend next that the trial court erred in excluding certain testimony as to damages in their trespass action and in directing a verdict in favor of the defendant on the issue of damages. In their complaint, plaintiffs sought nominal damages for trespass and

compensatory damages related to reconstruction of the fence and frustration of their horse breeding business. The right to damages, however, assumes a wrongful act has occurred. (*Wertheimer v. Glanz* (1934), 277 Ill. App. 389, 392.) The conclusion that there has been no trespass was implicit in the jury's finding in favor of the defendant on the issue of adverse possession. Plaintiffs having suffered no wrong, were not entitled to recover any damages. The verdict of the jury thus rendered moot all issues concerning damages and we need not consider them on review.

■ As their final argument, plaintiffs contend that the trial court erred when it quashed affidavits of jurors submitted in support of plaintiffs' post-trial motion. In the affidavits signed by several of the jurors, they stated that they believed defendant did not establish adverse possession during his 17-year occupancy of the land and that the court's instructions relating to the 20-year limitation period were confusing. The trial court quashed the affidavits and did not consider them in denying plaintiffs' post-trial motion.

The court must consider a motion for judgment notwithstanding the verdict solely upon the basis of evidence introduced in trial (*People ex rel. Reynolds v. Aldridge* (1982), 107 Ill. App. 3d 679, 684, 437 N.E.2d 1268), and in a motion for a new trial affidavits of jurors cannot be used to show that the jury misunderstood the instructions or the law. *Chalmers v. City of Chicago* (1982), 88 Ill. 2d 532, 539-40, 431 N.E.2d 361; *Sale v. Allstate Insurance Co.* (1984), 126 Ill. App. 3d 905, 925, 467 N.E.2d 1023, *appeal denied* (1984), 101 Ill. 2d 587.

The jury was not polled in this case when it returned its verdict and plaintiffs do not now claim that was not the verdict of the jury. Nothing contemporaneous is shown to suggest the jurors were confused during deliberations or before their discharge; we cannot determine whether the alleged confusion arose during trial or in the jurors' post-trial contact with plaintiffs or their representatives. The affidavits were of no proper assistance to the trial court in its consideration of the post-trial motion and the court did not err in quashing them.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

HOPF and STROUSE, JJ., concur.